[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Moore,* Slip Opinion No. 2018-Ohio-3237.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-3237

THE STATE OF OHIO, APPELLANT, *v*. MOORE, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Moore,* Slip Opinion No. 2018-Ohio-3237.]

*Criminal law—Jail-time credit—R.C. 2967.191—Firearm specifications—R.C. 2929.14—Equal protection—Jail-time-credit provision in R.C. 2967.191 may not serve to reduce a prison term for a firearm specification—Because a rational basis exists for an inmate to serve the entirety of a mandatory sentence before becoming eligible for judicial release, requiring an inmate to serve the entire sentence for a firearm specification does not violate equal-protection guarantees.*

(No. 2017-0483—Submitted December 6, 2017—Decided August 14, 2018.)

APPEAL from the Court of Appeals for Erie County,

No. E-16-030, 2017-Ohio-673.

_____

**DeWine, J.**

{¶ 1} An offender who has been locked up in jail prior to being sentenced to prison is entitled to a credit against his prison term for any time that the offender spent in confinement awaiting trial and sentencing. But an exception in Ohio law dictates that this "jail-time credit" does not apply to the portion of a prison sentence that is imposed for a firearm specification. The primary question presented is whether the exception as applied in this case violates equal-protection guarantees. We conclude that it does not. The court of appeals below held otherwise, so we reverse.

## I. Background

{¶ 2} Following guilty pleas to four felony offenses, Gerry Moore Sr., a.k.a. Gary Moore Sr., was sentenced to an aggregate prison term of 8 years and 11 months. The aggregate sentence included two mandatory terms for firearm specifications—one a 3-year specification and the other a 1-year specification—that Moore was required to serve consecutively to each other and prior to the rest of the sentence. *See* R.C. 2929.14(C)(1)(a). Before sentencing, Moore moved the trial court to credit the 283 days that he had served in jail prior to sentencing toward the 4 years that he needed to serve for the firearm specifications. Moore wanted the jail-time credit applied to the prison terms for the firearm specifications because doing so would enable him to apply for judicial release sooner than if it was applied to the prison terms for the underlying felonies.

{¶ 3} Pursuant to R.C. 2929.20(B), "an eligible offender" may move the sentencing court for a reduction of his aggregated nonmandatory prison term through judicial release. The timing of an offender's application for judicial release depends upon the length of his nonmandatory prison term and whether his sentence includes a mandatory prison term. A prisoner who, like Moore, is sentenced to a nonmandatory prison term of between two and five years is eligible to apply for judicial release "not earlier than one hundred eighty days after the expiration of all

2

mandatory prison terms." R.C. 2929.20(C)(2). Thus, crediting the jail time that Moore served prior to sentencing toward the mandatory terms imposed for the firearm specifications would allow him to apply for release three years and nine months into his sentence. On the other hand, if the jail-time credit is applied only to the terms imposed for the underlying felonies as opposed to those for the specifications, he will need to serve the four years of his prison terms for the firearm specifications and then wait six months before applying for judicial release. If judicial release is granted, an offender is placed on probation on conditions set by the trial court, and the court may reimpose the sentence that it reduced if the offender violates those conditions. R.C. 2929.20(K).

{¶ 4} The trial court determined that the jail-time credit should be applied only to Moore's prison terms imposed for the underlying felonies. Moore appealed, arguing that the trial court had improperly construed the applicable statutes in refusing to apply the credit to the terms for the firearm specifications.

{¶ 5} The court of appeals reversed the trial court's judgment but did so on an issue that was neither raised nor briefed by the parties. In a two-to-one decision, the Sixth District found that the failure to apply jail-time credit to Moore's firearm-specification terms might risk an equal-protection violation at some point in the future should Moore be granted judicial release. 2017-Ohio-673, 85 N.E.3d 547, ¶ 27. The court explained that if Moore were successful in achieving judicial release, he might not be able to fully use the jail-time credit that he had earned. It reversed the trial court's judgment and remanded the case to the trial court with the instruction to credit Moore's 283 days of time served to his firearm-specification terms. *Id.* at ¶ 29.

{¶ 6} We accepted the state's discretionary appeal, which challenged the appellate court's conclusion on the equal-protection issue. 149 Ohio St.3d 1431, 2017-Ohio-4396, 76 N.E.3d 1207. Moore maintains that the court of appeals' judgment can be sustained on both statutory and equal-protection grounds.

3

## II. The Plain Language of R.C. 2929.14(B)(1)(b) Does Not Allow Jail-Time Credit to be Applied to Mandatory Firearm-Specification Sentences

{¶ 7} Because this court decides constitutional issues only when absolutely necessary, we first consider Moore's statutory argument. *Norandex, Inc. v. Limbach*, 69 Ohio St.3d 26, 28, 630 N.E.2d 329 (1994).

{¶ 8} Ohio law allows for the additional punishment of an offender when a firearm is involved in the offense. R.C. 2929.14(B). This is accomplished through a "specification," which must be set forth in the indictment for the underlying felony. *See, e.g.*, R.C. 2941.141. For example, an offender who had a firearm on his person or under his control while committing the offense is subject to a one-year prison term for the specification. *Id.*; R.C. 2929.14(B)(1)(a)(iii). An offender who displays, brandishes, or uses the firearm to facilitate the underlying offense is subject to an additional three-year prison term. R.C. 2941.145; R.C. 2929.14(B)(1)(a)(ii). A sentence for a specification must be served consecutively to and prior to any sentence for the underlying felony offense. R.C. 2929.14(C)(1)(a).

{¶ 9} The prison term for the firearm specification is mandatory. R.C. 2929.14(B)(1)(a). Moreover, the term "shall not be reduced pursuant to section 2967.19 [petition for early release], section 2929.20 [petition for judicial release], section 2967.193 [earned days of credit], or *any other provision of Chapter 2967 or Chapter 5120 of the Revised Code.*" (Emphasis added.) R.C. 2929.14(B)(1)(b) (the "specification provision").

{¶ 10} In this case, Moore seeks to have the time he spent in the county jail credited toward his sentence pursuant to R.C. 2967.191 ("the jail-time-credit provision"). According to the provision, "[t]he department of rehabilitation and correction shall reduce the stated prison term of a prisoner * * * by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of

4

bail while awaiting trial * * * as determined by the sentencing court." R.C. 2967.191. The jail-time-credit provision plainly constitutes "any other provision of Chapter 2967." Under the terms of the specification provision, then, Moore's prison terms for the firearm specifications could not be reduced based upon the time he served in jail prior to sentencing.

{¶ 11} As he did before the court of appeals, Moore seeks to avoid this result by pointing to the definitions of "prison term" and "stated prison term" set forth in R.C. 2929.01:

> As used in this chapter:
>
> * * *
>
> (BB) "Prison term" includes either of the following sanctions for an offender:
>
> (1) A stated prison term;
>
> (2) A term in a prison shortened by, or with the approval of, the sentencing court pursuant to section 2929.143, 2929.20, 2967.26, 5120.031, 5120.032, or 5120.073 of the Revised Code.
>
> * * *
>
> (FF) "Stated prison term" means the prison term, mandatory prison term, or combination of all prison terms and mandatory prison terms imposed by the sentencing court pursuant to section 2929.14, 2929.142, or 2971.03 of the Revised Code or under section 2919.25 of the Revised Code. "Stated prison term" includes any credit received by the offender for time spent in jail awaiting trial, sentencing, or transfer to prison for the offense * * *.

In Moore's view, the specification provision does not prohibit reduction of a prison term for a firearm specification by the amount of time spent in jail prior to

sentencing, because that reduction is already included in the definition of "stated prison term."

{¶ 12} But Moore's reading is impossible to square with the rest of the statutory scheme. Remember, the jail-time-credit provision requires that the department of rehabilitation and correction "reduce the stated prison term of the prisoner" by the amount of time that has already been served. R.C. 2967.191. To adopt Moore's reading would mean that the prisoner gets two-for-one credit for days served prior to his prison sentence: days served in jail would be subtracted once pursuant to the definition of "stated prison term." And then those same days would again be subtracted pursuant to the jail-time-credit provision.

{¶ 13} As an alternative to such a nonsensical reading, Moore proposes that we treat the jail-time-credit provision simply as "the mechanism to apply confinement credit, which is part of the prison term." But to read the provision in this manner would make it superfluous to the definitional statute. We must assume that the General Assembly does not use words unnecessarily—particularly not entire statutory provisions—and we avoid construing any statute in a manner that might render some portion of the provision "meaningless or inoperative." *State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 373, 116 N.E. 516 (1917).

{¶ 14} There is another problem with Moore's argument. Even if we were to buy his premise that a stated prison term by definition already includes a reduction for jail-time credit, a court would still need to decide how to apply the credit to the stated prison term. That is, should the credit be applied toward the portion imposed for firearm specifications? Moore offers no statutory reason why the credit should be applied in such a manner. And the specification provision says just the opposite.

{¶ 15} Thus, we conclude that the plain language of the specification provision requires that jail-time credit not be applied toward prison terms for

firearm specifications.  R.C. 2929.01(FF)'s indication that a stated prison term "includes any credit received by the offender for time spent in jail awaiting trial, sentencing, or transfer to prison" is best understood as a simple acknowledgment that R.C. 2967.191 requires application of all due jail-time credit and that a stated prison sentence must be shortened by the amount of time spent in jail before entry into the state prison system. We assume that the General Assembly meant exactly what it said in the specification provision: the prison term for a firearm specification may not be reduced based on R.C. 2967.193 or any other provision of R.C. Chapter 2967.  Because the jail-time-credit provision appears in R.C. Chapter 2967, it may not serve as a basis for a reduction of Moore's prison terms for the firearm specifications.

### III.  No Equal-Protection Violation

{¶ 16} We turn now to the conclusion of the court of appeals that it would violate equal-protection guarantees to apply the jail-time credit in the manner dictated by the specification provision.

*A.  The Court of Appeals Should Not Have Considered the Equal-Protection Issue Without First Ordering Additional Briefing*

{¶ 17} The question whether the trial court's refusal to apply the jail-time credit to the prison terms imposed for Moore's firearm specifications violated principles of equal protection was neither raised nor briefed in the court of appeals. Our rules require that appellate courts "[d]etermine [an] appeal on its merits on the assignments of error set forth in the briefs under App.R. 16."  App.R. 12(A).  We have recognized, however, that while a court of appeals "need not pass on errors which were not assigned or argued, this power is discretionary."  *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170, 522 N.E.2d 524 (1988).  When a court does so, it "should * * * give the parties notice of its intention and an opportunity to brief the issue."  *Id.  See also C. Miller Chevrolet, Inc. v. Willoughby Hills*, 38 Ohio St.2d 298, 301, 313 N.E.2d 400 (1974), fn. 3.

**{¶ 18}** The concurring-in-judgment-only opinion argues that based on the waiver doctrine, we should not consider the equal-protection question. This argument evinces a misunderstanding of the doctrine and our caselaw. In *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), a case cited in the concurring-in-judgment-only opinion, we considered whether it was proper for a court of appeals to refuse to address a constitutional issue that had not been first raised at the trial court level. We held that "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *Id.* at syllabus. The question here is not whether a court of appeals may disregard an issue that is raised for the first time on appeal to that court, but rather what is the appropriate course when a court of appeals has grounded its decision on a constitutional issue that was not raised by the parties.

**{¶ 19}** To follow the suggestion of the concurring-in-judgment-only opinion would require this court to ignore the first proposition of law accepted for review by a majority of this court (including the concurring justice)—that is, whether R.C. 2929.14(B)(1)(b) violates the Equal Protection Clause of the United States Constitution or the Ohio Constitution. And where would that leave us? If we decided only that the statute's plain language prohibits applying jail-time credit to a prison term for a firearm specification, the court of appeals' judgment that the statute was unconstitutional would remain.

**{¶ 20}** Our caselaw makes clear that while the court of appeals had the discretion to reach the equal-protection issue, it should have given the parties an opportunity to brief the issue. And even though we have accepted the issue for review, it would be within our authority to remand to the court of appeals to order briefing on the issue. But the issue has now been fully briefed in this court. As a consequence, it is in the interest of judicial economy that we proceed to the merits.

8

### B. There Is No Equal-Protection Violation

{¶ 21} The court of appeals premised its finding of an equal-protection violation upon its conclusion that Moore could be denied the full benefit of his jail-time credit in the event that he is granted judicial release. In doing so, the court did not explicitly state whether it was referring to guarantees set forth in the Ohio Constitution or those in the federal Constitution, but it appears to have based its decision on the federal constitutional provision. As the opinion concurring in judgment only points out, the court of appeals relied upon our opinion in *State v. Fugate,* 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, which was premised upon caselaw interpreting the federal provision and contained only a passing reference to the Ohio provision.

{¶ 22} Moore now argues that both his Ohio and his federal rights are implicated. Article I, Section 2 of the Ohio Constitution provides: "All political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." The Fourteenth Amendment to the United States Constitution declares that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Most recently, we have considered the two guarantees to be "functionally equivalent" and employed the same analysis under both provisions. *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 29. No party has suggested that we do otherwise today. Thus, we agree with the opinion concurring in judgment only that this is not an appropriate case to take up the question whether the provisions should be given different treatment.

### 1. Equal protection and jail-time credit

{¶ 23} The United States Supreme Court has never directly addressed the extent to which the equal-protection clause may provide a right to jail-time credit. In assuming that such a right existed, the court of appeals cited decisions from two federal district courts in Ohio. 2017-Ohio-673, 85 N.E.3d 547, citing *Workman v. Cardell*, 338 F.Supp. 893 (N.D.Ohio 1972), *aff'd in part and vacated in part*, 471

F.2d 909 (6th Cir.1972); *White v. Gilligan*, 351 F.Supp. 1012 (S.D.Ohio 1972). In *Workman*, the court took up a defendant's claim that he had been wrongfully denied credit for the time he spent in jail awaiting trial when he could not afford bail. At the time, there was no Ohio statute that required the provision of jail-time credit. *Workman* at 898. The court looked to United States Supreme Court decisions that applied equal-protection principles to require that an indigent defendant be provided with a free transcript for the purposes of appeal, *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), and to strike down rules that exposed indigent defendants to prison time for the inability to pay fines, *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971). After discussing these cases, the district court concluded that "[t]he Equal Protection Clause requires that *all* time spent in any jail prior to trial and commitment by a [prisoner who is] unable to make bail because of indigency *must* be credited to his sentence." (Emphasis sic.) *Workman* at 901. After *Workman* and *White* were decided, the Ohio General Assembly amended the jail-time-credit statute, R.C. 2967.191, to require that jail-time credit be awarded.

{¶ 24} The holding of the Ohio federal district courts has not been universally adopted by federal courts. Indeed, when the Sixth Circuit Court of Appeals reviewed *Workman*, it vacated the judgment on other grounds and pointedly reserved consideration of the equal-protection issue. *Workman*, 471 F.2d at 911. The results from other circuits vary. The Fifth Circuit has declared that "there is no federal constitutional right to credit for time served prior to sentence." *Gremillion v. Henderson*, 425 F.2d 1293, 1294 (5th Cir.1970). But the same court recognized an exception to its rule, concluding that a defendant whose presentence incarceration would result in his being confined for longer than the maximum allowable term must be given jail-time credit. *Jackson v. Alabama*, 530 F.2d 1231, 1236-1237 (5th Cir.1976). *See also Hook v. Arizona*, 496 F.2d 1172 (9th Cir.1974).

Other courts have found that the Equal Protection Clause was implicated regardless of the amount of total time a defendant was incarcerated. *See King v. Wyrick*, 516 F.2d 321 (8th Cir.1975).

{¶ 25} In light of the statutory provision providing for jail-time credit, our court has had little occasion to consider the constitutional dimensions of the issue. In *Fugate*, 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, we considered whether jail-time credit under R.C. 2967.191 could be credited toward only one term that was being served concurrently to others. We looked to the statutory language and the rule promulgated to administer the statute and determined that jail-time credit must be applied to each concurrent term. *Id.* at ¶ 12. Although we did make clear that the practice of awarding jail-time credit had its roots in the equal-protection guarantees of the state and federal constitutions, *id.* at ¶ 7, and say that to deny jail-time credit to one concurrent term would violate the equal-protection clause, *id.* at ¶ 22, we decided that case largely on statutory grounds.

{¶ 26} Thus, our own precedent and that of the federal courts establishes that the failure to provide jail-time credit may raise equal-protection concerns in some circumstances. But under the facts before us, we find no equal-protection violation.

2. No equal-protection violation based upon the possibility that Moore might not use his full jail-time credit if he is granted judicial release

{¶ 27} The court of appeals concluded that as applied to Moore, the specification provision violated his equal-protection rights. 2017-Ohio-673, 85 N.E.3d 547, at ¶ 27. It explained that "giving full credit to an offender may require applying [jail-time] credit to a mandatory term when otherwise the potential length of the stated prison sentence is not accurately reflective of the time the offender's liberty was restrained." 2017-Ohio-673, 85 N.E.3d 547, at ¶ 26, citing *Fugate*, 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, at ¶ 22. The court continued, "[I]f appellant is successful in seeking judicial release, there is risk the application

of R.C. 2929.14(B)(1)(b) will improperly deny him credit for his [time in jail prior to sentencing]." *Moore* at ¶ 27. In other words, in the court of appeals' view, it was possible that Moore could be released early and not reap the entire benefit of his jail-time credit. Because of this possibility, the court concluded that "such a sentence would be contrary to law in light of equal protection and *Fugate*." *Id.*

{¶ 28} As an initial matter, we note that when an equal-protection violation has been found in jail-time-credit cases, the violation has been premised on differential treatment between those who were able to afford bail and those who were not able to afford bail. *See, e.g., Workman,* 338 F.Supp. at 900 ("indigency [was] the sole reason why the petitioner was in jail"); *White*, 351 F.Supp. at 1013 (class comprised of inmates "who are financially unable to post bail bonds"). Moore, however, has made no showing that his presentence incarceration was the result of his inability to post bond. To the contrary, for the vast majority of the time that Moore was jailed, he was held without bond. Moore was held for completion of a mental-health-competency evaluation, and after the evaluation was completed, the court ordered him held without bond because of the threat he posed to the victim. For only 27 of his 283 days of jail time was there a bond in place. Even for these 27 days, Moore has made no showing that he was unable to afford bond. Indeed, any suggestion that Moore was discriminated against based upon his economic status is belied by the argument presented by his attorney at the hearing on jail-time credit. Counsel represented that "he was unable to make bail because the Court denied bail. So he had no choice or ability to be released on bail * * *."

{¶ 29} Even more detrimental to Moore's claim is the simple fact that he has not been denied jail-time credit. Moore received the full amount of jail-time credit; it was applied to the portion of his sentence for the underlying felonies. His complaint is not that he lost his jail-time credit but that the credit was not allocated in the manner in which he prefers. In Moore's view, he *could* lose his jail-time credit because he would not be able to use it if he were granted judicial release. But

12

there is no right to judicial release; it is an act of grace by the court. *State v. Coffman*, 91 Ohio St.3d 125, 742 N.E.2d 644 (2001). If Moore is granted judicial release, he will suffer no injury: judicial release will give Moore exactly what he wants from jail-time credit—not being in prison. Moreover, if Moore were to obtain judicial release, he would not lose his jail-time credit. If he were to violate a condition of release, he could be sent back to prison, and any remaining credit would be applied. *See* R.C. 2929.20. Moore can demonstrate no harm from what he claims is unconstitutionally disparate treatment.

3. No violation based upon Moore's eligibility for judicial release

**{¶ 30}** In his brief, Moore presents an additional argument that his right to equal protection was violated. He contends that "to satisfy equal protection, defendants who could not make bail must not be incarcerated longer than their wealthier counterparts before becoming eligible for judicial release." If jail-time credit applies only to Moore's imprisonment for the underlying offenses, he will have served an extra 283 days—his presentence confinement—before being eligible to apply for judicial release. But to repeat a point made earlier, Moore's suggestion that he is treated differently than "wealthier counterparts" is not supported by the record. He cannot demonstrate that wealth had anything to do with the dissimilar timing of a judicial-release application.

**{¶ 31}** Because Moore has not alleged that he is a member of a suspect class or is subject to a classification that burdens a fundamental right, we apply rational-basis review to his claim. *See State v. Thompkins*, 75 Ohio St.3d 558, 561, 664 N.E.2d 926 (1996); *see also McGinnis v. Royster*, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973) (applying rational-basis review to state sentencing schemes). Here, in enacting the specification provision, the legislature rationally determined that those offenders who committed an offense with a firearm should be subject to an additional prison sentence. *See, e.g.*, *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (upholding a state law that imposed a

mandatory minimum sentence on offenders who possessed a firearm during their offense). And it is quite reasonable for the legislature to say to those who might be tempted to use a firearm in an offense, "If you get caught, not only will you have to serve extra time for using the weapon, but you will have to serve every day of that extra time before you become eligible for judicial release." Because there exists a rational basis for requiring an inmate to serve the entirety of his mandatory sentence before becoming eligible for judicial release, we find no equal-protection violation.[1]

### IV. Conclusion

{¶ 32} Under the plain language of the specification provision, Moore was not entitled to have his jail-time credit applied toward the portion of his sentence that was imposed for firearm specifications. Furthermore, application of the specification provision in this case did not violate constitutional equal-protection guarantees. We reverse the court of appeals' decision and reinstate the trial court's judgment applying Moore's 283 days of jail-time credit to the prison terms imposed for the underlying felonies.

Judgment reversed.

KENNEDY, FRENCH, and LASTER MAYS, JJ., concur.

O'DONNELL, J., concurs in judgment only.

FISCHER, J., concurs in judgment only, with an opinion joined by O'CONNOR, C.J.

ANITA LASTER MAYS, J., of the Eighth District Court of Appeals, sitting for O'NEILL, J.

_____

[1] This case does not present the question whether the specification provision might violate equal-protection guarantees in another case—for example, when the length of a defendant's presentence incarceration exceeds the length of the nonspecification portion of his sentence. Accordingly, we express no opinion as to any constitutional concerns that might be raised by such a case.

**FISCHER, J., concurring in judgment only.**

{¶ 33} I agree with the majority's conclusion that pursuant to the plain language of R.C. 2929.14(B)(1)(b), jail-time credit cannot be applied toward prison terms for firearm specifications. I further agree with the majority's conclusion that because the parties did not have an opportunity to brief the issue whether that statute violates a constitutional right to equal protection, the court of appeals should not have decided that issue sua sponte. I disagree, however, with the majority's decision to address the issue of the statute's constitutionality. The parties were not given an opportunity below to establish the scope and substance of the equal-protection challenge to the statute. Instead, the court of appeals framed the challenge. Given this poor foundation for addressing a significant issue, I believe that it is not appropriate for us to consider the constitutionality of the statute at this time. I accordingly concur in judgment only in the majority's decision to reverse the judgment of the court of appeals.

{¶ 34} The majority notes that the equal-protection issue has been fully briefed before this court, and it states that it is in the interest of judicial economy to address the merits of the issue rather than remand the case for additional briefing in the court of appeals. This court has stated, however, that " 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' " *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. While reviewing courts have discretion to review a statute's constitutionality for plain error, courts "ordinarily enforce the waiver doctrine unless there is 'some extraordinary reason to disregard it.' " *State v. Flannery*, 1st Dist. Hamilton No. C-140426, 2015-Ohio-1360, ¶ 7, quoting *Zawahiri v. Alwattar*, 10th Dist. Franklin No. 07AP-925, 2008-Ohio-3473, ¶ 14. In my view, judicial economy alone is not

sufficient reason for this court to disregard the waiver doctrine, particularly in a case in which our consideration of the constitutional issue is hindered by the parties' failure to raise it in the first instance and by the appellate court's less-than-comprehensive framing and analysis of the issue.

{¶ 35} The majority does acknowledge that review of the issue is complicated by the fact that the court of appeals did not specify whether it based its analysis on the equal-protection guarantees set forth in the federal Constitution, the Ohio Constitution, or both. It appears that the Sixth District Court of Appeals' decision was based solely upon federal law. That court's analysis was premised on the decision in *State v. Fugate*, 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440. *Fugate* contains a single, passing reference to the equal-protection-rights guarantee of the Ohio Constitution: "The practice of awarding jail-time credit, although now covered by state statute, has its roots in the Equal Protection Clauses of the Ohio and United States Constitutions." *Id.* at ¶ 7. Notably, the *Fugate* court did not cite or quote any particular provision of the Ohio Constitution or any case interpreting the Ohio Constitution. In determining that denying jail-time credit when a defendant is sentenced to concurrent terms constitutes an equal-protection violation, the *Fugate* court relied solely on federal cases that interpreted the federal equal-protection provision. *Id.* at ¶ 7, 22. The court specifically stated that "[t]o deny such credit would constitute a violation of *the Equal Protection Clause*." (Emphasis added.) *Id.* at ¶ 22. Given that the court's analysis was limited to federal law, it appears that the court based its decision on the federal Equal Protection Clause.

{¶ 36} Because the Sixth District's decision in this case was premised on *Fugate*'s analysis, the Sixth District's equal-protection analysis was similarly confined to whether a violation of the federal Equal Protection Clause occurred. Thus, even though the parties have set forth token arguments in this appeal related to the Ohio Constitution's equal-protection guarantee, it is inappropriate for this

court to engage in any analysis of the Ohio Constitution's equal-protection rights because no consideration of that issue occurred below.

{¶ 37} The language of the relevant constitutional provisions and recent decisions of this court indicate that treating the two equal-protection provisions as "functionally equivalent" could be incorrect. Before proceeding with the assumption that the Ohio and federal equal-protection guarantees are "functionally equivalent," we should look at the question to determine whether they really are.

{¶ 38} Pursuant to the Fourteenth Amendment to the United States Constitution, no state shall "deny to any person within its jurisdiction the equal protection of the laws." Pursuant to the Ohio Constitution, Article I, Section 2, "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit * * *."

{¶ 39} Significantly, the equal-protection language found in the Ohio Constitution, which was adopted in 1851, was formulated before the language of the Fourteenth Amendment to the United States Constitution was proposed. Thus, it may not be entirely correct to interpret the Ohio equal-protection guarantee through the lens of its federal counterpart. Given the different language used in each provision, it is possible that the two provisions set forth unique protections that are not necessarily contained in both provisions. *See* Holland, McAllister, Shaman & Sutton, *State Constitutional Law: The Modern Experience*, 132 (2d Ed.2016) (asserting that while the history and purpose of a state constitutional provision may provide a basis for interpreting identically worded state and federal constitutional provisions differently, there is an additional basis for construing the two provisions differently when the state constitution's language differs materially from the language of its federal counterpart).

{¶ 40} This court has construed the Ohio and federal equal-protection clauses as being functionally equivalent. *State v. Thompson*, 95 Ohio St.3d 264, 2002-Ohio-2124, 767 N.E.2d 251, ¶ 11, citing *Am. Assn. of Univ. Professors, Cent.*

*State Univ. Chapter v. Cent. State Univ.*, 87 Ohio St.3d 55, 59, 717 N.E.2d 286 (1999). This proposition, however, has been called into question by this court. In *State v. Noling*, 149 Ohio St.3d 327, 2016-Ohio-8252, 75 N.E.3d 141, ¶ 11, this court stated that "the Equal Protection Clause of the Ohio Constitution is coextensive with, *or stronger than*, that of the federal Constitution." (Emphasis added.) Similarly, in *State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368, ¶ 14, 23, a plurality of the court emphasized that the Ohio Constitution is a document of independent force and concluded that even if the federal constitution's Equal Protection Clause did not apply in the case, the equal-protection guarantees of the Ohio Constitution forbid disparate treatment of peace officers through a legislative scheme criminalizing certain conduct while removing due-process protections. And, a fourth justice joined the judgment of the three-justice plurality in *Mole* on the basis that the Ohio Constitution is a document of independent force. *Id.* at ¶ 72 (Lanzinger, J., concurring in judgment only).

**{¶ 41}** Given these recent decisions, which reject the conclusion that the two equal-protection provisions are "functionally equivalent," this court will eventually have to address whether we should treat those provisions identically. Because this issue has not been raised or briefed in this case, however, it is inappropriate for us to settle it at this time.

**{¶ 42}** For the foregoing reasons, I concur in judgment only.

O'CONNOR, C.J., concurs in the foregoing opinion.

––––––––––––––––––

Kevin Baxter, Erie County Prosecuting Attorney, and Marta S. Schultes, Assistant Prosecuting Attorney; and Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Frank Romeo Zeleznikar, Assistant Prosecuting Attorney, for appellant.

Timothy Young, Ohio Public Defender, and Allen Vender, Assistant Public Defender, for appellee.

January Term, 2018

_____