[Cite as *State v. Clinkscale*, 2023-Ohio-4146.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                               :

      Plaintiff-Appellant,          :

                                                    No. 22AP-708

v.                                           :          (C.P.C. No. 14CR-5579)

Aarin J. Clinkscale,                         :          (REGULAR CALENDAR)

      Defendant-Appellee.           :

---

D E C I S I O N

Rendered on November 16, 2023

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Darren M. Burgess,* for appellant.

**On brief:** *Carpenter Lipps, LLP*, *Kort Gatterdam*, and *Erik P. Henry*, for appellee.

---

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, P.J.

{¶ 1} The plaintiff-appellant, State of Ohio, appeals the decision of the Franklin County Court of Common Pleas, granting defendant-appellee, Aarin J. Clinkscale's, motion for judicial release.

{¶ 2} On September 20, 2016, Clinkscale entered a plea of guilty to two first-degree felony counts of involuntary manslaughter and one first-degree felony count of aggravated robbery with a three-year gun specification. The court imposed a sentence of four years on the aggravated robbery with an attached three-year firearm term and three years on each of the involuntary manslaughter charges, all to be served consecutively—an aggregate term of 13 years of incarceration. The three specification years were mandatory pursuant to R.C. 2941.145 and 2929.13(F)(8). And because Clinkscale was locally incarcerated for over two years prior to his plea and sentencing, the court awarded Clinkscale 762 days of jail-time credit against his sentence.

{¶ 3}   On June 4, 2020, Clinkscale filed a pro se motion for judicial release.  The state responded on June 17, 2020, arguing that Clinkscale was "not eligible to file for judicial release * * * [because he] has not satisfied the statutory waiting period before filing the present motion." (June 17, 2020 Pl.'s Resp. at 1.)

> R.C. 2929.20(C) sets forth specific waiting periods that must pass before an offender can seek judicial release. Because defendant was sentenced to a non-mandatory prison term of eleven years, and three years mandatory time, he must wait five years after his mandatory sentence expires before filing for judicial release.  R.C. 2929.20(C)(4).
>
> Defendant was admitted into ODRC custody on November 16, 2016.  Defendant filed his motion for judicial release on June 4, 2020. Per R.C. 2929.20(C)(4), defendant must serve his three-year mandatory sentence plus another five years before filing for judicial release. Defendant completed his three year mandatory sentence in November 2019.  *Taking his jail time credit into consideration, defendant will not be eligible for judicial release until October 2022 at the earliest.*

(Emphasis added.) *Id.* at 1-2.

{¶ 4}   In accord with the state's objection, the trial court denied Clinkscale's June 2020 motion, but stated that "[i]f the Court had the ability to release the Defendant at this time, it likely would," and further stated that:

> [i]f the Defendant continues to complete programs and engage in all the prison educational and other opportunities available to him and the Defendant has <u>no serious rule violations</u>, *the Court will strongly consider and likely release the Defendant in October, 2022*. The Defendant should reapply in late August or September of 2022. The Court would encourage the Defendant to try to remain "ticket free." The Court has released many inmates who have zero (0) rule violations.  *For the reason that the Court does not have the power or authority to release the Defendant until at earliest October, 2022, the Defendant's Motion is DENIED.*

(Emphasis added.)  (June 25, 2020 Journal Entry at 1-2.)

Clinkscale acted just as directed—he received only de minimis rules infractions over the next two years, and on October 6, 2022 he filed a new motion for judicial release, both in accordance with the state's understanding of his eligibility and in accordance with the trial court's holding.

{¶ 5}   But on October 14, 2022, the state filed an objection to Clinkscale's new motion, and again contended that Clinkscale had not yet satisfied the statutory waiting period.  Relying on *State v. Moore*, 154 Ohio St.3d 94, 2018-Ohio-3237, the state argued— contrary to its prior representation to the court—that Clinkscale was not eligible for judicial release until November 16, 2024:

> The Defendant's eligibility for judicial release is governed by the *second* clause of R.C. 2929.20(C)(4). He must serve the sentence imposed for the three-year *firearm specification* first, and then serve five (5) years of the nonmandatory prison term.
>
> The Ohio Supreme Court's decision in *Moore* requires the Defendant to serve eight (8) years ***in prison*** before he can apply for judicial release.  In accordance with the decision in *Moore* the Defendant's jail time credit <u>does not</u> apply to the portion of a prison sentence that is imposed for a firearm specification.
>
> The Defendant arrived at prison on November 16, 2016.  <u>After</u> the Defendant has served the three-year mandatory prison term imposed for a firearm specification, his five-year waiting period to request judicial release is defined by R.C. 2929.20 (C)(4) and (C)(5). (Moore was sentenced to serve a non-mandatory prison term of four (4) years and 11 months, being at least two years but less than five years, and a mandatory prison term of four (4) years for one (1) and three (3) year firearm specifications. Moore's waiting period to request judicial release was defined by R.C. 2929.20(C)(2)).  Moore was required to serve 180 days <u>after</u> he had served the four year prison term imposed for firearm specifications before he could request judicial release.
>
> The Defendant will not have served eight (8) years in prison until November 16, 2024. His expected release date with jail time credit of approximately 762 days for time spent in jail prior to sentencing and awaiting transport to prison, is October 6, 2027.

(Emphasis sic.)  (Oct. 14, 2022 Pl.'s Resp. at 6-7.)

{¶ 6}   Notwithstanding the state's objection, on November 17, 2022 the trial court held a judicial release hearing. At the hearing, the state acknowledged its earlier representation that Clinkscale would be eligible for judicial release at that time, calling it a "mistake":

> MR. CABLE: As we've discussed in the back, we don't believe that would occur as far as him being in prison for that period of time until sometime in 2024. So, therefore, it's my position that the motion is premature and that he is, in fact, legally not eligible for judicial release at that time.
>
> I will address the fact that in a prior memorandum contra, that I believe this Court actually relied upon at one point, we did mistakenly say that he would be eligible in October of 2022, which is what brings us here now.
>
> I should note that even though we acknowledge that was a mistake, the motion never agreed to judicial release in October of 2022 -- we still were opposing judicial release, so it's not like we were in agreement that he was going [to] get out, something he could rely on. So we were opposing for other reasons, even though we mistakenly said that he could get out October of 2022.
>
> And just for the record, I want to note that according to our records, when Mr. Clinkscale filed, we -- in that six-week period, it was the everybody is filing because of COVID period and our office got over 500 requests for judicial release in a six-week period, and I think our folks got a little overwhelmed.
>
> However, the law is the law, and I think it's clear that he's not eligible for release until 2024, and so I will stand on that.

(Nov. 17, 2022 Tr. at 4-5.) In response, Clinkscale's attorney argued that (1) *Moore* was not the law at the time Clinkscale entered his plea and it did not apply retroactively to him; (2) properly understood, R.C. 2929.20 and *Moore* did not preclude the court from applying Clinkscale's jail-time credit to the five-year waiting period for judicial release motions; and (3) it would violate equal protection guarantees to not so apply Clinkscale's jail-time credit. *Id.* at 10.

{¶ 7} The trial court accepted these arguments and granted Clinkscale's motion for judicial release, placing him on five years of community control sanctions:

> I'm not insensitive to the fact that somebody lost their life, there's no doubt about it; however, I do believe in redemption. He has done everything I have asked him to do. I am convinced by your arguments that the law allows me to release him. I'm convinced that the motion is timely.
>
> I'm certain they will probably appeal, and I guess we will find out from the court of appeals whether or not I'm right. But

> *State vs. Moore* was not in existence at the time. I know that he's relied on judicial release.
>
> And I do sympathize with the prosecutor's office. I know there were 500 motions filed. You know, there was a mistake made. And they did not agree to judicial, so I know that is in the record.
>
> I am going to make the following findings: I'm going to grant the motion, but there's going to be a lot of conditions.

*Id.* at 15.

{¶ 8} As the trial court predicted, the state has now appealed and asserts a single assignment of error, arguing that the trial court "erred in granting judicial release as the Defendant was not eligible pursuant to R.C. 2929.20(C)." The state contends that the two years Clinkscale spent in local jail do not affect his eligibility for judicial release, and that Clinkscale will be not eligible for judicial release until he has served five years *in prison* over and above his mandatory gun time.

{¶ 9} The state's argument rests primarily on the Supreme Court of Ohio's decision in *Moore*, 2018-Ohio-3237, ¶ 7-15, in which the court held that jail-time credit recognized under R.C. 2967.191 could not be applied to a R.C. 2941.145 firearm specification term that must be imposed pursuant to R.C. 2929.14(B)(1), and therefore that jail-time credit could not shorten the R.C. 2929.20(C) waiting period required for the offender to be eligible for judicial release.

{¶ 10} But this case presents a different question than the one resolved in *Moore*. In *Moore*, the Supreme Court held that the actual gun specification sentence imposed could not be reduced, whereas here the state is arguing that sentence for *the underlying felony* cannot be reduced. The issues are obviously related, but the statutory language governing each question is different. Most notably, unlike the firearm specification sentence imposed under 2929.14(B)(1), there is no statutory provision that precludes the application of R.C. 2967.191 jail-time credit to the underlying felony. In *Moore*, the court reasoned:

> The prison term for the firearm specification is mandatory. R.C. 2929.14(B)(1)(a). Moreover, the term "shall not be reduced pursuant to section 2967.19 [petition for early release], section 2929.20 [petition for judicial release], section 2967.193 [earned days of credit], or *any other provision of Chapter 2967 or Chapter 5120 of the Revised Code*." (Emphasis added.) R.C. 2929.14(B)(1)(b) ("the specification provision").

In this case, Moore seeks to have the time he spent in the county jail credited toward his sentence pursuant to R.C. 2967.191 ("the jail-time-credit provision"). * * * The jail-time-credit provision plainly constitutes "any other provision of Chapter 2967." Under the terms of the specification provision, then, Moore's prison terms for the firearm specifications could not be reduced based upon the time he served in jail prior to sentencing.

* * *

Thus, we conclude that the plain language of the specification provision requires that jail-time credit not be applied toward prison terms for firearm specifications. * * * We assume that the General Assembly meant exactly what it said in the specification provision: the prison term for a firearm specification may not be reduced based on R.C. 2967.193 or any other provision of R.C. Chapter 2967. Because the jail-time-credit provision appears in R.C. Chapter 2967, it may not serve as a basis for a reduction of Moore's prison terms for the firearm specifications.

*Id.* at ¶ 9-10, 15. *Moore*, therefore, rested primarily on the plain language of R.C. 2929.14(B)(1)(b)—language that governs the firearm specifications imposed upon Clinkscale, and not his underlying criminal charges.[1]

{¶ 11} Notwithstanding, the state suggests R.C. 2929.20 in general must be interpreted strictly against eligibility for release, and therefore that the analysis in *Moore* forbids the use of R.C. 2967.191 jail-time credit to reduce the nonmandatory portions of Clinkscale's sentence as well as his mandatory firearm specification time. R.C. 2929.20[2] provides, in pertinent part:

(A)(1)(a) Except as provided in division (A)(1)(b) of this section, "eligible offender" means any person who, on or after April 7, 2009, is serving a stated prison term that includes one or more nonmandatory prison terms. A person may be an eligible offender and also may be an eighty per cent-qualifying offender or, during a declared state of emergency, a state of emergency-qualifying offender.

---

[1] R.C. 2929.13(F)(8), which also relates to the imposition of mandatory firearm sentences, contains similar language. *See infra* at ¶ 15.

[2] The state's brief cites to the 2016 version of R.C. 2929.20. The statute has been amended several times in the period between Clinkscale's conviction and the filing of his 2022 judicial release motion, but this opinion uses the version currently in effect, as the substantive provisions that apply to this case are identical in all versions of the statute.

\* \* \*

(C)(1) Subject to division (C)(2) of this section, an eligible offender may file a motion for judicial release with the sentencing court, or a state of emergency-qualifying offender may file a motion for judicial release with the sentencing court during the declared state of emergency, within the following applicable periods:

\* \* \*

(d) If the aggregated nonmandatory prison term or terms is more than five years but not more than ten years, the eligible offender or state of emergency-qualifying offender may file the motion not earlier than the date on which the offender has served five years of the offender's stated prison term or, if the prison term includes a mandatory prison term or terms, not earlier than five years after the expiration of all mandatory prison terms.

The state argues that as a result of R.C. 2929.20(C)(1)(d), Clinkscale is not an "eligible offender" under R.C. 2929.20(A)(1)(a) because his "aggregated nonmandatory prison term" was "not more than ten years," and that he has not yet served his three years of mandatory specification time plus "five years after the expiration of all mandatory prison terms." The state, therefore, apparently interprets the statutory phrase "prison term" as used in R.C. 2929.20 to include only time actually served *in prison*, rendering the two years Clinkscale was held in local jail awaiting trial irrelevant for purposes of determining when he is eligible for judicial release.

{¶ 12} On its face, the state's argument here seems reasoned, and it is true that certain language in *Moore* may appear to support this strict interpretation. Most specifically, the court rejected the defendant's attempt to argue that the definitions of "prison term" in R.C. 2929.01(BB) and "stated prison term" in R.C. 2929.01(FF) required the reduction of all terms of incarceration by jail-time credit recognized under R.C. 2967.191, and therefore always required reduction of the waiting periods to apply for judicial release under R.C. 2929.20(C) by the amount of jail-time credit earned. *See Moore* at ¶ 11-15. But *Moore* itself throws some cold water on a broad understanding of that rejection—the opinion establishes that those definitional provisions of R.C. 2929.01 are "best understood as a simple acknowledgement that R.C. 2967.191 requires application of all due jail-time credit and that a stated prison sentence must be shortened by the amount

of time spent in jail before entry into the state prison system." (Emphasis added.) *Id.* at ¶ 15. But instead of adopting a broad holding that jail-time credit does not apply to the judicial release waiting periods set forth in R.C. 2929.20(C), *Moore* clearly rests on the specific language of the firearm specification sentencing provisions, observing that "the General Assembly meant exactly what it said *in the specification provision*: the prison term *for a firearm specification* may not be reduced based on R.C. 2967.193 or any other provision of R.C. Chapter 2967." *Id.* (paraphrasing R.C. 2929.14(B)(1)(b).)

**{¶ 13}** In short, *Moore* does not mandate that the judicial release waiting periods under R.C. 2929.20(C) are completely unaffected by jail-time credit recognized under R.C. 2967.191. Rather, it merely holds that the plain language of R.C. 2929.14(B)(1)(b), which states that a firearm specification "shall not be reduced pursuant to * * * any other provision of Chapter 2167" specifically excludes the application of jail-time credit to firearm specification sentences and by extension to applications for judicial release for those sentences only. And the crucial statutory language that is critical to the analysis in *Moore* is not present in the statutes governing the remainder of Clinkscale's sentence.

**{¶ 14}** Moreover, the statutory interpretation argument rejected in *Moore* is much stronger here. The definition of "stated prison term" in R.C. 2929.01(FF) includes "any credit received by the offender for time spent in jail awaiting trial, sentencing, or transfer to prison for the offense * * *," and because that there is no specific statutory provision excluding such credit (as there was in Moore), it appears that Clinkscale's jail-time credit can be applied to reduce his five-year judicial release waiting period. Indeed, that appears to be how the state ended up advancing the October 2022 eligibility date in the first instance. (June 17, 2020 Pl.'s Resp. at 2.) ("Taking his jail time credit into consideration, defendant will not be eligible for judicial release until October 2022 at the earliest.").

**{¶ 15}** Additional support for this understanding is provided by R.C. 2929.13(F)(8), which provides that a sentencing court:

> shall not reduce the term or terms authorized for the offense pursuant to section 2929.20 * * * or any other provision of Chapter 2967 * * * for * * * [a]ny offense * * * if the offender had a firearm on or about the offender's person or under the offender's control while committing the felony, *with respect to a portion of the sentence imposed pursuant to division (B)(1)(a) of section 2929.14 of the Revised Code for having the firearm.*

(Emphasis added.) This language forbids the court from granting jail-time credit or judicial release for a mandatory firearm specification term, but specifically *exempts* the underlying crime to which the specification is attached. As noted earlier, the state's interpretation of R.C. 2929.20(C) is that neither the waiting period for firearm specification nor the waiting period spent in prison for the underlying felony may be reduced by jail-time credit. But if the legislature had wished to enact that rule, it would not have limited the application of the foregoing statute to "a portion of the sentence imposed * * * for having the firearm"; it could easily have left that qualification out of the statute entirely, thereby clearly adopting the state's position.

{¶ 16} Given all of the foregoing, we see no reason to depart from a natural and harmonious reading of the relevant statutes. Taken together, R.C. Sections 2929.01, 2929.13, 2929.20, and 2967.191 indicate that, absent a specific statutory provision to the contrary as described in *Moore*, eligibility for judicial release on a felony offense should be determined by the term of prison imposed including any applicable jail-time credit. Accordingly, Clinkscale was eligible for judicial release when it was granted by the trial court on November 17, 2022.

{¶ 17} For the foregoing reasons, the state's sole assignment of error is overruled and the decision of the Franklin County Court of Common Pleas granting Clinkscale's motion for judicial release is affirmed.

*Judgment affirmed.*

DORRIAN and BOGGS, JJ., concur.

———————