[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Clinkscale*, Slip Opinion No. 2025-Ohio-2043.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-2043

THE STATE OF OHIO, APPELLANT, *v.* CLINKSCALE, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Clinkscale*, Slip Opinion No. 2025-Ohio-2043.]

*Criminal law—Judicial release—R.C. 2929.20—Jail-time credit—R.C. 2967.191— Jail-time credit does not reduce the required waiting period following expiration of mandatory prison terms for offenders with both mandatory and nonmandatory prison terms, because the five-year waiting period is fixed—Judgment reversed and cause remanded.*

(No. 2024-0005—Submitted March 11, 2025—Decided June 11, 2025.)

APPEAL from the Court of Appeals for Franklin County,

No. 22AP-708, 2023-Ohio-4146.

_____

DETERS, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, OSOWIK, HAWKINS, and SHANAHAN, JJ., joined.  THOMAS J. OSOWIK, J., of the Sixth District Court of Appeals, sat for BRUNNER, J.

**DETERS, J.**

{¶ 1} Ohio's jail-time-credit statute, R.C. 2967.191, requires that the State of Ohio credit an offender for the time he spent in confinement prior to sentencing. Another statute, the judicial-release statute, R.C. 2929.20, allows a trial court to reduce the nonmandatory prison term of an eligible offender after the offender has satisfied a certain waiting period. In this case, we consider the interplay of these statutes to determine when an offender who was sentenced to both a mandatory prison term and nonmandatory prison terms may be considered for judicial release. The Tenth District Court of Appeals concluded that the jail-time credit of such an offender shortened the amount of time the offender must wait to file his motion for judicial release and so affirmed the trial court's judgment granting judicial relief. We disagree with the Tenth District's conclusion. The credited jail time does not apply to the waiting period that must pass before the offender seeks judicial release. We therefore reverse the judgment of the court of appeals.

## I. Background

### A. Clinkscale pleads guilty and is sentenced

{¶ 2} In 2014, Aarin Clinkscale was indicted for his involvement in an armed robbery that led to the death of two people. Clinkscale pled guilty to one count of aggravated robbery with an attached firearm specification and to two counts of involuntary manslaughter. On November 9, 2016, the trial court imposed sentences totaling 14 years: a three-year term for the aggravated-robbery count, a three-year term for the firearm specification, and two four-year terms for the involuntary-manslaughter counts. The three-year term for the firearm specification was a mandatory prison term. *See* R.C. 2929.14(B)(1)(a)(ii); R.C. 2929.01(X). The trial court determined that Clinkscale should be credited with 762 days for the time he had been confined prior to his conviction. *See* R.C. 2967.191(A). He began serving his sentence on November 16, 2016.

*B. Clinkscale's first motion for judicial release*

**{¶ 3}** On June 4, 2020, Clinkscale filed a motion for judicial release under former R.C. 2929.20(C)(4).[1] The State objected, arguing that Clinkscale's motion was premature because he had to serve the three-year mandatory prison term for the firearm specification and then wait five years before seeking judicial release. The State asserted that even when Clinkscale's jail-time credit was factored into the calculation, he was not eligible for judicial release "until October 2022 at the earliest." The trial court denied Clinkscale's motion, stating that if it "had the ability to release [Clinkscale] at [that] time, it likely would" but that "the law does not allow for early release for [Clinkscale] until October 6, 2022." Franklin C.P. No. 14CR-5579, 1 (June 25, 2020).

*C. Clinkscale's second motion for judicial release*

**{¶ 4}** Clinkscale filed a second motion for judicial release on October 6, 2022. The State again objected, contending that Clinkscale's motion was premature and that his motion should fail on its merits. Regarding the timing of Clinkscale's motion, the State argued that Clinkscale was not permitted to file a motion for judicial release until he had served eight years (three years for his mandatory firearm-specification prison term followed by a five-year waiting period). Thus, by the State's calculation, Clinkscale could not seek judicial release until November 16, 2024. During a hearing on the motion, the State acknowledged that in its response to Clinkscale's first motion for judicial release, it had "mistakenly" said that he would be eligible for judicial release in October 2022. Following the hearing, the trial court granted Clinkscale's motion.

---

1. The waiting periods under former R.C. 2929.20(C)(4), which was in effect when Clinkscale filed his motions for judicial release, were identical to those under current R.C. 2929.20(C)(1)(d). *See* former R.C. 2929.20(C)(4), 2018 Am.Sub.S.B. No. 201 (effective Mar. 22, 2019). Because the parties in this case use the current statute's numbering, this opinion does so as well.

*D. The State's appeal to the Tenth District and then to this court*

**{¶ 5}** The State appealed to the Tenth District. In its appellate brief, the State maintained that Clinkscale's motion for judicial release was premature. It did not challenge the trial court's decision regarding the merits of Clinkscale's motion. Clinkscale contended that the trial court correctly applied the judicial-release statute and argued alternatively that the State's interpretation of the statute would result in equal-protection issues. The Tenth District affirmed the trial court's judgment, determining that Clinkscale's jail-time credit could be applied to reduce the amount of time he must wait before filing his motion for judicial release. 2023-Ohio-4146, ¶ 14 (10th Dist.).

**{¶ 6}** We accepted jurisdiction over the State's sole proposition of law: "In determining judicial-release eligibility, jail-time credit does not reduce the required waiting period 'after the expiration of all mandatory prison terms' under R.C. 2929.20(C)(1)(a) [through] (d)." *See* 2024-Ohio-984.

## II. Analysis

**{¶ 7}** The State argues that the court of appeals incorrectly applied Clinkscale's jail-time credit to shorten the time that he was required to wait before filing a motion for judicial release. For his part, Clinkscale contends that the State did not preserve its argument about the timing of his eligibility for judicial release and that the court of appeals correctly concluded that his jail-time credit should be applied to reduce the amount of time he had to wait before filing his motion. We conclude that the State's argument was not forfeited by its miscalculation in its response to the first motion for judicial release and that its argument is supported by the plain language of both the judicial-release statute and the jail-time-credit statute.

*A. The State preserved its argument*

**{¶ 8}** As an initial matter, Clinkscale offers a two-pronged attack on the State's ability to put forth its argument here. First, he contends in his merit brief

that the State did not preserve its statutory-language argument, because it did not "present the definitional and chronological arguments in its merit brief to the Tenth District." But the State argued in its brief in the court of appeals that under the language of the statute, an offender like Clinkscale "must wait at least five years after the expiration of [all the] mandatory terms before applying for judicial release." As this Court held in *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, "[o]nce a 'claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.' " 2020-Ohio-1056, ¶ 21, quoting *Yee v. Escondido*, 503 U.S. 519, 534 (1992). Although its argument was not made in the same terms as it is here, the State sufficiently preserved its claim regarding the language of the statute.

{¶ 9} The second prong of Clinkscale's argument is that the State did not object to the trial court's statement regarding Clinkscale's first motion for judicial release that Clinkscale would be eligible to seek judicial release on October 6, 2022. But there was no need for the State to object. The effect of that trial-court entry was to deny Clinkscale's motion for judicial release at that time, not to definitively determine his future eligibility for judicial release. And when Clinkscale filed his second motion, the State acknowledged its error and put forth the same argument it makes here.

### B. *Jail-time credit and judicial release*

{¶ 10} Having determined that the State preserved the arguments it puts forth here, we turn to the issue raised in the State's proposition of law. This appeal is largely about the interplay between two statutes in Ohio's sentencing scheme—R.C. 2967.191 ("the jail-time-credit statute") and R.C. 2929.20 ("the judicial-release statute").

{¶ 11} The jail-time-credit statute provides that an offender's stated prison term "shall [be] reduce[d] . . . by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was

convicted and sentenced, including confinement in lieu of bail while awaiting trial . . ., as determined by the sentencing court." R.C. 2967.191(A). Jail-time credit does not shorten an offender's prison sentence; it credits the offender with the time already spent in confinement prior to sentencing so that he does not serve more time than is imposed by his sentence. Here, the trial court determined that Clinkscale was entitled to 762 days of jail-time credit.

{¶ 12} In contrast, the judicial-release statute provides a way for eligible offenders to reduce the length of their sentences. While the jail-time-credit statute requires that an offender's stated prison term be reduced by the amount of time he was confined prior to sentencing, the judicial-release statute gives the trial court discretion to reduce an eligible offender's "aggregated nonmandatory prison term" once the required waiting times are satisfied, R.C. 2929.20(B) and (C). Thus, under R.C. 2929.20(C), an eligible offender must wait a certain period before seeking judicial release.[2] That waiting period is based on the overall length of the offender's prison term. *Id.* The parties agree that the relevant part of the statute is R.C. 2929.20(C)(1)(d), which applies when an "aggregated nonmandatory prison term or terms is more than five years but not more than ten years." Under that division, an offender is permitted to "file the motion [for judicial release] not earlier than the date on which the offender has served five years of the offender's stated prison term or, if the prison term includes a mandatory prison term or terms, not earlier than five years after the expiration of all mandatory prison terms," *id.* Here, the trial court imposed a mandatory prison term for the firearm specification, so the latter half of R.C. 2929.20(C)(1)(d) applied: Clinkscale could not file a motion for judicial release until five years after the expiration of his mandatory three-year prison term. The question, then, is whether that waiting period was shortened by the jail-time credit to which Clinkscale was entitled.

---

2. That Clinkscale qualifies as an "eligible offender" under R.C. 2929.20(A)(1) is not in dispute.

**{¶ 13}** The parties agree that under our decision in *State v. Moore*, 2018-Ohio-3237, Clinkscale's jail-time credit did not shorten the time he had to serve for the mandatory three-year firearm-specification prison term. Nevertheless, Clinkscale argues—and the court of appeals concluded—that his jail-time credit did shorten the time he had to wait before seeking judicial release. Thus, in the Tenth District's view, the five-year waiting period was shortened by 762 days, making Clinkscale eligible for judicial release in October 2022. 2023-Ohio-4146 at ¶ 14-16 (10th Dist.) The State, however, contends that while jail-time credit works to shorten the amount of time that an offender spends in prison, it does not shorten the waiting period laid out in R.C. 2929.20(C). As discussed below, the plain language of both the jail-time-credit statute and the judicial-release statute shows that the State is correct.

*C. Eligibility for judicial release under R.C. 2929.20(C)(1)(d) begins five years after the expiration of mandatory prison terms*

**{¶ 14}** Recall that R.C. 2929.20(C)(1)(d) provides for two different waiting periods before eligible offenders with aggregated nonmandatory prison terms of more than five years but not more than ten years may seek judicial release. For offenders sentenced to purely nonmandatory prison terms, the first clause ("nonmandatory-terms clause") applies. Those offenders may file a motion for judicial release "not earlier than the date on which the offender has served five years of the offender's stated prison term." *Id.* For offenders sentenced to both mandatory and nonmandatory prison terms, the second clause ("mandatory-terms clause") applies. Those offenders may file a motion "not earlier than five years after the expiration of all mandatory prison terms." *Id.* By its plain terms, the mandatory-terms clause means that eligible offenders who were sentenced to a mandatory prison term may seek judicial release only after five years have passed since they completed their mandatory prison term.

**{¶ 15}** Clinkscale maintains that the five-year waiting period referred to in the mandatory-terms clause must be reduced by the amount of time credited under the jail-time-credit statute. In support, he points to the nonmandatory-terms clause, which provides that an eligible offender "may file the motion [for judicial release] not earlier than the date on which the offender has served five years of the offender's stated prison term," R.C. 2929.20(C)(1)(d). The definition of "stated prison term" includes the reduction for jail-time credit, R.C. 2929.01(FF), i.e., part of the five-year waiting period "of the offender's stated prison term," R.C. 2929.20(C)(1)(d), that has been served by the offender includes any time credited under R.C. 2967.191(A). This reading jibes with R.C. 2967.191(A)'s provision that the reduction for jail-time credit is made to a "prison term."

**{¶ 16}** The glaring problem with Clinkscale's argument is that the phrase "stated prison term" does not appear in the mandatory-terms clause. Nevertheless, Clinkscale contends that the clauses are "glued . . . together" so that the "five years" referred to in the mandatory-terms clause necessarily means "five years of the stated prison term." Thus, Clinkscale argues, the jail-time credit applies to that five-year term as well.

**{¶ 17}** But no amount of massaging can make the judicial-release statute read the way Clinkscale proposes. Rather than demonstrating the General Assembly's intention to "glue" the two clauses together, the language and the punctuation used by the legislature make clear that the two clauses contain different time requirements and that the time requirements are dependent on whether the offender was sentenced to a mandatory prison term. The clauses are separated by a comma and the word "or," which serve to indicate two distinct offenders—an offender with purely nonmandatory prison terms and an offender with mandatory and nonmandatory prison terms—with two distinct time requirements. *See O'Toole v. Denihan*, 2008-Ohio-2574, ¶ 51, quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("The word 'or' is primarily used as a disjunctive, and

'[c]anons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise . . . ." [Bracketed text in original.]). That the two clauses must be treated differently is underscored by the omission of "stated prison term" in the mandatory-terms clause. In the mandatory-terms clause, the five-year waiting period is not tied to the offender's prison term. Instead, it is tied to the length of time—five years—that has passed since the expiration of the offender's mandatory prison term. The nonmandatory-terms clause is different. It ties eligibility for judicial release to how much of the stated prison term the offender has served: also five years. Because jail-time credit affects the calculation of how much time an offender has already served, *see* R.C. 2967.191(B), the nonmandatory-terms clause, which connects an offender's eligibility determination to the served time of his stated prison term, implicitly requires consideration of jail-time credit. In contrast, the mandatory-terms clause does not refer to how much of the stated prison term the offender has served, and the jail-time-credit statute is not implicated.

{¶ 18} For offenders who have both mandatory and nonmandatory prison terms, like Clinkscale, eligibility for judicial release under R.C. 2929.20(C)(1)(d) depends on a fixed five-year waiting period that begins once the offender has completed all his mandatory prison terms. Because the five-year waiting period is fixed, jail-time credit is irrelevant to the eligibility determination for such offenders. Thus, we agree with the State, and accordingly, we hold that jail-time credit does not reduce the required waiting period following the expiration of mandatory prison terms under R.C. 2929.20(C)(1)(d).

### III. Conclusion

{¶ 19} Because Clinkscale was sentenced to both a mandatory prison term and nonmandatory prison terms, he was permitted to seek judicial release no earlier than five years after he completed his mandatory prison term. His jail-time credit does not shorten the five-year waiting period. Clinkscale's motion, which was filed

9

before the five-year waiting period was satisfied, was premature and should not have been considered by the trial court. We therefore reverse the judgment of the Tenth District Court of Appeals and remand the case to that court for its consideration of Clinkscale's equal-protection argument.

Judgment reversed

and cause remanded.

_____

Shayla D. Favor, Franklin County Prosecuting Attorney, and Seth L. Gilbert, Assistant Prosecuting Attorney, for appellant.

Carpenter Lipps, L.L.P., Kort Gatterdam, and Michael Rogers, for appellee.

Dave Yost, Attorney General, T. Elliot Gaiser, Solicitor General, and Mathura J. Sridharan and Stephen P. Carney, Deputy Solicitors General, urging reversal for amicus curiae, Ohio Attorney General Dave Yost.

_____