[Cite as *State v. Favours*, 2024-Ohio-2819.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 23AP-130 |
| | | (C.P.C. No. 19CR-6663) |
| v. | : | |
| | | No. 23AP-131 |
| Carlos M. Favours, Jr., | : | (C.P.C. No. 18CR-5264) |
| Defendant-Appellant. | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on July 25, 2024

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Darren M. Burgess*, for appellee. **Argued:** *Seth L. Gilbert*.

**On brief:** *Dennis C. Belli*, for appellant. **Argued:** *Dennis C. Belli*.

APPEALS from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Defendant-appellant, Carlos M. Favours, Jr., appeals the Franklin County Court of Common Pleas judgments sentencing him to consecutive prison terms for violating the conditions of his community control sanctions in Franklin C.P. No. 18CR-5264 and for his guilty plea to one count of involuntary manslaughter with a firearm specification in Franklin C.P. No. 19CR-6663. For the following reasons, we affirm in part and reverse in part.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} Between October 2017 and December 2019, Favours was indicted in three separate cases. First, in Franklin C.P. No. 17CR-5934 ("the 2017 case"), Favours was indicted on one count of carrying a concealed weapon in violation of R.C. 2923.12, a fourth-degree felony, and one count of having weapons while under disability in violation of R.C. 2923.13, a third-degree felony. Next, Favours was indicted in Franklin C.P. No. 18CR-5264

("the 2018 case") on one count of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331, a third-degree felony. Finally, in Franklin C.P. No. 19CR-6663 ("the 2019 case"), Favours was indicted for first-degree felony involuntary manslaughter in violation of R.C. 2903.04, with a three-year firearm specification; third-degree felony involuntary manslaughter in violation of R.C. 2903.01, with a three-year firearm specification; reckless homicide in violation of R.C. 2903.041, a third-degree felony, with a three-year firearm specification; and heaving weapons while under disability in violation of R.C. 2923.13, a third-degree felony.

{¶ 3} In February 2018, pursuant to a plea agreement, Favours entered a plea of guilty in the 2017 case to having weapons while under disability, and the trial court entered a nolle prosequi for the charge of carrying a concealed weapon. The trial court sentenced Favours to two years of community control/basic supervision. One of the conditions of Favours's community control was that he could not have any new arrests or convictions. The trial court notified Favours that, should he violate the terms of his community control, or violate the law, the court could impose a prison a term of 24 months.

{¶ 4} Favours was indicted in the 2018 case while serving his community control sanction from the 2017 case. On December 18, 2018, Favours appeared before the trial court for a plea hearing in the 2018 case and a community control revocation hearing in the 2017 case. With respect to the 2018 case, Favours pled guilty to failure to comply with the order or signal of a police officer. Before accepting Favours's plea, the trial judge explained to Favours that, if the court were to impose a prison term in the 2018 case and also to revoke community control and impose a prison term in the 2017 case, "any prison terms by law must be served consecutively with each other based on [his] plea" to the offense of failure to comply with the order or signal of a police officer. (Dec. 18, 2018 Tr. at 8.)

{¶ 5} After accepting Favours's guilty plea, the trial court immediately proceeded to sentencing. The trial court sentenced Favours to two years of community control with intensive supervision, subject to the same conditions as his 2017 community control sanction, imposed a 90-day period of house arrest, and imposed a three-year driver's license suspension. The trial court restored Favours's community control in the 2017 case subject to the original conditions, but it extended the term of community control by one year and increased Favours's level of supervision to intensive. The court ordered as an additional condition in both cases that Favours not possess any weapons. The court found

that Favours was entitled to 60 days of jail-time credit, which it applied wholly to the 2017 case. The court informed Favours that if he failed to comply with the terms of his community control, it would impose 24-month prison sentences in both the 2017 and 2018 cases and that those sentences would run consecutively, for an aggregate sentence of four years of incarceration.

{¶ 6} Favours was indicted in the 2019 case on December 27, 2019, following his arrest on December 23, 2019, and he has remained in custody ever since.

{¶ 7} On December 31, 2021, the trial court issued a termination entry in the 2017 case, which stated in its entirety:

> This cause came on further to be heard, and it appearing to the Court that Carlos Maurice Favours Jr[.], Defendant herein, was heretofore convicted of Having Weapons Under Disability, a Felony of the Third degree and on 2/14/2018, imposition of sentence was suspended and the Defendant was placed on Community Control for a period of 24 month(s), and it now appearing to the Court that said Defendant has accumulated jail time credit in the amount of the original sentence.
>
> It is, therefore, ordered, adjudged, and decreed, for good cause shown that said Defendant be discharged from Community Control.

(Dec. 31, 2021 Termination Entry, case No. 17CR-5934.)

{¶ 8} Following numerous delays, Favours appeared before the court for a change-of-plea hearing in the 2019 case on December 6, 2022. Pursuant to a plea agreement with the state, Favours pled no contest to Count 1, involuntary manslaughter, a first-degree felony, along with the attached three-year firearm specification. As part of its plea colloquy with Favours, the trial court explained that any prison term imposed in the 2019 case would, by operation of law, run consecutively to any prison term the court might impose for violation of his community control in the 2018 case.

{¶ 9} On January 18, 2023, the trial court held a sentencing hearing in the 2019 case and a revocation and resentencing hearing in the 2018 case. The court revoked Favours's community control sanction in the 2018 case and imposed the previously announced sentence of 24 months in prison. In the 2019 case, the court imposed an indefinite prison sentence with a minimum term of 9 years and a maximum term of 13 1/2 years for the offense of involuntary manslaughter, and a consecutive 3-year prison term for

the associated firearm specification, for an aggregate sentence in the 2019 case of 12 to 16 1/2 years. The court reiterated that, "by operation of law," the sentences in the 2018 and 2019 cases must run consecutively.

{¶ 10} Counsel and the trial court engaged in a lengthy discussion about the amount of jail-time credit to which Favours was entitled. The state recognized that Favours had been held for 1,177 days—1,124 days from the day of his arrest on the 2019 charges, and 53 days on the 2017 and/or 2018 cases that accrued prior to his 2019 arrest.[1] However, the state urged the court to deduct 730 days of jail-time credit that were supposedly applied to close the 2017 case, leaving only 447 days of credit to apply to the 2018 and/or 2019 case. The state went on to argue that, because the 2018 failure to comply sentence was required to run consecutively to the sentence in the 2019 case, *see* R.C. 2921.331(D), the 447 days should be credited to *either* the 2018 sentence *or* the 2019 sentence.

{¶ 11} Favours's counsel, on the other hand, argued that Favours was entitled to have 1124 days of jail-time credit applied toward his sentences in both the 2018 and 2019 cases. Favours argued, pursuant to *State v. Jones*, 171 Ohio St.3d 496, 2022-Ohio-4485, that the court lacked authority to impose consecutive sentences in the 2018 and 2019 cases. And he argued that, pursuant to *State v. Fugate*, 117 Ohio St.3d 261, 2008-Ohio-856, because those sentences must run concurrently, he is entitled to have his days of jail-time credit applied to both.

{¶ 12} The trial court rejected Favours's argument, and it awarded Favours 447 days of jail-time credit in the 2019 case and no credit in the 2018 case.

{¶ 13} Before the conclusion of the January 18, 2023 sentencing hearing, the prosecutor asked the trial court to "make sure that the entry for [the 2019 case] states that the time [on that case] is consecutive to both the 18 and the 17-case[s] even though the 17-case is already closed out," because "a lot of that time" purportedly applied to the 2017 case "was served since" the incident underlying the 2019 indictment. (Jan. 18, 2023 Tr. at 65.) The trial court questioned how it could run any prison term in the 2018 or 2019 cases consecutive to a sentence in the 2017 case that had already been terminated.

{¶ 14} Inconsistently with the sentence announced at the sentencing hearing, the judgment entry in the 2019 case stated Favours's sentence as "a minimum term of ELEVEN

---

[1] The prosecutor explained those days, stating "In 2017, he served four days on the felony. In 2018, he served 49 days on the felony case, and then he served 1,124 days since this incident [giving rise to the 2019 charges] occurred. That's a total of 1,177 days." (Jan. 18, 2023 Tr. at 49-50.)

(11) YEARS and a maximum term of SIXTEEN AND A HALF (16.5) YEARS," for involuntary manslaughter, "plus a mandatory definite and consecutive prison term of THIRTY-SIX (36) MONTHS for the Firearm Specification." (Emphasis sic.) (Feb. 3, 2023 Jgmt. Entry, case No. 19CR-6663 at 2.) Further, despite the trial court's expressed skepticism when the state requested it, the judgment entry states that the sentence in the 2019 case "shall be served consecutively to" the sentences in both the 2017 and the 2018 cases. *Id.*

{¶ 15} The judgment entry in the 2018 case states, "Defendant shall serve TWENTY-FOUR (24) MONTHS, to be served consecutively to [the 2017 case] at the OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS." (Feb. 3, 2023 Jgmt. Entry, case No. 18CR-5264 at 1.)

{¶ 16} On appeal, Favours raises seven assignments of error:

> [1.] THE TRIAL COURT'S ORDER REQUIRING DEFENDANT-APPELLANT TO SERVE A RESERVED PRISON TERM FOR A FAILURE TO COMPLY CONVICTION AND A PRISON TERM FOR AN INVOLUNTARY MANSLAUGHTER CONVICTION CONSECUTIVELY IS CONTRARY TO LAW DUE TO ITS FAILURE TO GIVE HIM NOTICE THAT THE RESERVED PRISON TERM MUST BE SERVED CONSECUTIVELY TO ANY OTHER PRISON TERM "THEN BEING IMPOSED" AT THE TIME OF REVOCATION.
>
> [2.] THE TRIAL COURT'S ERRONEOUS CALCULATION OF JAIL TIME CREDIT AGAINST DEFENDANT-APPELLANT'S INVOLUNTARY MANSLAUGHTER PRISON TERM, AND DENIAL OF ANY JAIL TIME CREDIT AGAINST HIS FAILURE TO COMPLY PRISON TERM, VIOLATED R.C. 2967.191 AND HIS RIGHTS UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, RESULTING IN A SENTENCE THAT IS CONTRARY TO LAW.
>
> [3.] THE TRIAL COURT'S IMPOSITION OF A THREE-YEAR CONSECUTIVE PRISON TERM FOR THE FIREARM SPECIFICATION ATTACHED TO THE INVOLUNTARY MANSLAUGHTER COUNT IS CONTRARY TO LAW BECAUSE DEFENDANT-APPELLANT QUALIFIES FOR THE EXCEPTION FOUND IN R.C. 2929.14(B)(1)(e), AND/OR DID NOT ENGAGE IN THE CONDUCT DESCRIBED IN R.C. 2929.14(B)(1)(a)(i).

[4.] THE TRIAL COURT'S ERRONEOUS ASSUMPTION THAT THE MANDATORY PRISON TERM FOR THE FIREARM SPECIFICATION COULD BE USED TO INCREASE THE MAXIMUM TERM OF THE INDEFINITE SENTENCE IN THE INVOLUNTARY MANSLAUGHTER CASE RESULTED IN A SENTENCE THAT IS CONTRARY TO LAW.

[5.] THE SENTENCE IN THE JUDGMENT ENTRY IN THE INVOLUNTARY MANSLAUGHTER CASE IS INCONSISTENT WITH THE SENTENCE ANNOUNCED ORALLY DURING THE SENTENCING HEARING.

[6.] THE TRIAL COURT'S IMPOSITION OF AN INDEFINITE TERM OF IMPRISONMENT IN THE INVOLUNTARY MANSLAUGHTER CASE VIOLATED THE SEPARATION OF POWERS DOCTRINE AND DEFENDANT-APPELLANT'S RIGHT TO DUE PROCESS AND JURY TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 5 AND 16 OF THE OHIO CONSTITUTION.

[7.] DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, DUE TO DEFENSE COUNSEL'S FAILURE TO OBJECT TO THE ERRORS RAISED IN ASSIGNMENTS OF ERROR NOS. 3 AND 4.

## II. ANALYSIS

### A. Assignment of error No. 1—consecutive sentences for 2018 and 2019 cases

{¶ 17} In his first assignment of error, Favours argues that the trial court erred by ordering him to consecutively serve his prison sentence for violation of his community control in the 2018 case and his prison sentence for involuntary manslaughter in the 2019 case.

{¶ 18} In support of his first assignment of error, Favours relies on *Jones*, 2022-Ohio-4485, in which the Supreme Court of Ohio considered, "whether at the time a court imposes community control, it must notify the offender that a consecutive sentence is a possibility on revocation of community control in order for the court to have the authority, on revocation, to require that the reserved prison term be served consecutively with another prison sentence." *Id.* at ¶ 11. The court answered that question in the affirmative and held:

> when a court revokes community control, it may require that the reserved prison term be served consecutively to any other sentence then existing or then being imposed but only if at the time it imposed community control, it notified the offender that a consecutive sentence on revocation of community control was a possibility. * * * Thus, if an offender who is on community control is convicted and sentenced to prison for a new offense, the revocation proceeding in the original case may not result in a prison sentence that runs consecutively to the new prison sentence if no mention of consecutive sentences was made as part of the original sentence for community control.

*Id.* at ¶ 2.

{¶ 19} Favours concedes that the trial court informed him during the original sentencing hearing in the 2018 case that his failure to comply with the terms of his community control sanction would result in the imposition of a reserved 24-month prison sentence, which would run consecutively to the reserved 24-month prison sentence from the 2017 case if the court also imposed that sentence. But Favours claims that the court did *not* notify him that the reserved sentence in the 2018 case could, if imposed upon revocation of community control, also be run consecutively to any other prison term being newly imposed at the time of revocation. Favours contends that, as a result and pursuant to *Jones*, the trial court lacked authority to order his sentence on revocation of his community control in the 2018 case to run consecutively to his new prison sentence in the 2019 case. We disagree.

{¶ 20} In answering the question before it in *Jones*, the Supreme Court began by acknowledging the general presumption in Ohio that multiple sentences of imprisonment are to run concurrently and that a "trial court must make particularized findings to justify its use of discretion to impose consecutive sentences." *Id.* at ¶ 12. That discretion, however, cannot be exercised with respect to a sentence that may arise in the future:

> "the grant of discretion to a trial court concerning the imposition of a *consecutive sentence* is based upon the premise that the other sentence is either one being imposed by the trial court at that time or is a sentence previously imposed, even if by another court, and is not a sentence *in futuro*."

(Emphasis added.) *Id.*, quoting *State v. White*, 18 Ohio St.3d 340, 342 (1985). *Jones* essentially requires a trial court to reserve its discretion regarding consecutive sentences by

informing an offender who is placed on community control that, if the court revokes community control and imposes the reserved prison sentence, it may require the offender to serve the reserved sentence consecutively to "another prison sentence." *Id.* at ¶ 15. Such notice "must be given if the trial court wants to later have the option to impose a consecutive sentence if, in its discretion, a consecutive sentence is necessary to fulfill the purposes and principles of felony sentencing." *Id.*

{¶ 21} The state responds to Favours's argument by claiming that *Jones* is inapplicable here, because the sentence in the 2018 case—for failure to comply with an order or signal of a police officer under R.C. 2921.331(B)—must statutorily be served consecutively to any other prison term imposed upon the offender. R.C. 2929.14(C)(3) provides, "If a prison term is imposed for a violation of [R.C. 2921.331(B)], the offender shall serve that prison term consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender." *See also* R.C. 2921.331(D). A trial court's imposition of concurrent sentences for failure to comply with an order of a police officer and another offense, in circumstances where R.C. 2929.14(C)(3) and 2921.331(D) require consecutive sentences, is contrary to law. *State v. June*, 10th Dist. No. 12AP-901, 2013-Ohio-2775, ¶ 7. Therefore, the state maintains that application of *Jones* here "would place the trial court in the untenable and irreconcilable position in which it is statutorily required to impose a consecutive sentence which it is not permitted to impose." (Appellee's Brief at 4.)

{¶ 22} When it imposed the reserved sentence in the 2018 case, the trial court was sentencing Favours for his violation of the conditions of his community control, not for the underlying offense of failure to comply with the order or signal of a police officer. "It is well-established that any penalty imposed for violating a condition of one's community control sanctions is a punishment for that violation and not for the original underlying offense." *State v. Maines*, 12th Dist. No. CA2019-09-088, 2020-Ohio-3502, ¶ 11, quoting *State v. Richter*, 12th Dist. No. CA2014-06-040, 2014-Ohio-5396, ¶ 8. *See also*, *State v. Greene*, 2d Dist. No. 29836, 2024-Ohio-363, ¶ 33, citing *Maines.* In *State v. Hart*, 4th Dist. No. 13CA8, 2014-Ohio-3733, the Fourth District held that R.C. 2929.14(C)(3) did not apply to a sentence imposed for violation of community control, even though the community control sentence arose out of a guilty plea to the offense of failure to comply under R.C. 2921.331(B). It reasoned, "a prison sentence was never imposed for Hart's original offense

of Failure to Comply. The prison sentences * * * were only ordered after violations [of his] community control sanctions." *Id.* at ¶ 21. It held:

> R.C. 2929.14(C)(3) would not apply here, since Hart was not given a prison sentence initially and his sentence here on appeal was a result of a community control violation, not the original offense of Failure to Comply. Accordingly, Hart's sentences for community control violations * * * were not mandated by R.C. 2929.14(C)(3) to run consecutively.

*Id.* at ¶ 23. We agree with those courts and conclude that neither R.C. 2929.14(C)(3) nor R.C. 2921.331(D) required the trial court to run the prison sentence imposed in the 2018 case—for failure to comply with the conditions of community control—consecutively to the prison sentence imposed in the 2019 case for involuntary manslaughter.

{¶ 23} Because we reject the state's argument that *Jones* does not apply here, we must now consider whether the trial court notified Favours when it imposed community control sanctions in the 2018 case "that a consecutive sentence on revocation of community control was a possibility." *Jones* at ¶ 2. We conclude that it did.

{¶ 24} Favours's entry of guilty plea form in the 2018 case, by which he pled guilty to failure to comply with the order or signal of a police officer, states, "I understand the maximum prison term(s) for my offense(s) to be as follows: 36 months ODRC. If prison time is imposed, it must run consecutive to any other prison sentence." (Dec. 18, 2018 Entry of Guilty Plea, case No. 18CR-5264 at 1.) Favours acknowledged in the same form that, if he violated the terms of community control sanctions, then the court would be entitled to impose a prison sentence "up to the maximum term(s) allowed for the corresponding offense(s) as set forth above." *Id.* The trial court informed Favours that if it imposed a prison term in the 2018 case and also on revocation of community control in the 2017 case, the prison terms would be consecutive. (Dec. 18, 2018 Tr. at 3.) The trial court informed Favours that his signature on the notice of community control sanctions form in the 2018 case indicated his understanding that if he fails to comply with the conditions of community control, "this Court will impose a prison term of 24 months. That sentence is to run consecutively with the 24-month sentence in" the 2017 case. *Id.* at 27. The court warned Favours, "If I see you again, * * * you are going to do every day if I see you again. That is my promise to you." *Id.* at 25-26.

{¶ 25} The trial court did not expressly tell Favours, when sentencing him to community control in the 2018 case, that, if it revoked his community control and imposed

the reserved 24-month sentence, that sentence could be ordered to run consecutively not only to the reserved 24-month sentence from the 2017 case but also to any other sentence it may impose for new charges in the future, but we conclude that *Jones* does not require that level of specificity. *Jones* simply held that a community control revocation proceeding may not result in a prison sentence that runs consecutively to a new prison sentence "if no mention of consecutive sentences was made as part of the original sentence for community control." *Jones* at ¶ 2. In other words, to retain the discretion to order a reserved sentence imposed for a community control violation to run consecutively to another sentence, the court imposing community control sanctions must "notify the offender that a consecutive sentence is a possibility on revocation of community control." *Id.* at ¶ 11. In *Jones*, the trial court did not reserve its discretion to impose consecutive sentences because the record contained "no indication that Jones was advised that if she violated the terms of her community control, she might be ordered to serve the two-year reserved term consecutively to any other sentences." *Id.* at ¶ 3.

{¶ 26} Upon review of the transcript of Favours's December 18, 2018 plea and sentencing hearing in the 2018 case, there can be no doubt that the trial court placed Favours on notice when it reserved a two-year prison term in the 2018 case "that the [reserved] term could be required to be served consecutively to another prison term at the time of revocation." *Jones* at ¶ 15. Finding no error in the trial court's order that Favours's sentence in the 2019 case run consecutively to his sentence for violation of his community control in the 2018 case, we overrule Favours's first assignment of error.

### B. Assignment of error No. 2: Jail-time credit

{¶ 27} In his second assignment of error, Favours challenges the trial court's calculation and application of jail-time credit to his sentences in the 2018 and 2019 cases. As previously stated, when it resentenced Favours on his 2018 case following revocation of his community control sanction and sentenced Favours on his 2019 case, the trial court awarded Favours no days of jail-time credit in the 2018 case and 447 days of jail-time credit in the 2019 case. The trial court settled on 447 days of credit by subtracting 730 days, which had already been credited to the 2017 case so the 2017 case could be terminated, from the aggregate total of 1,177 days that Favours had been held on in all three cases.

{¶ 28} An appellate court may modify or vacate a trial court's computation of jail-time credit if it clearly and convincingly finds that the awarded credit is contrary to law.

*State v. Bowden*, 1st Dist. No. C-140462, 2015-Ohio-3740, ¶ 18, citing R.C. 2953.08(G)(2)(b). *See also State v. Bloom*, 3d Dist. No. 3-23-01, 2023-Ohio-2534, ¶ 14 (an appellate court "examine[s] whether the defendant-appellant has demonstrated by clear and convincing evidence that the trial court failed to properly award jail-time credit pursuant to the governing statutes"). A trial court's failure to properly calculate jail-time credit and include it in a sentencing entry is plain error. *State v. Smith*, 10th Dist. No. 21AP-48, 2021-Ohio-4091, ¶ 12.

{¶ 29} The practice of awarding jail-time credit has its roots in the Equal Protection Clauses of the United States and Ohio Constitutions, as those clauses do not tolerate disparate treatment of defendants based solely on their economic status. *Fugate*, 2008-Ohio-856 at ¶ 8. The General Assembly has codified that principle in R.C. 2967.191, which states, in pertinent part:

> (A) The department of rehabilitation and correction shall reduce the prison term of a prisoner * * * by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine the prisoner's competence to stand trial or sanity, confinement while awaiting transportation to the place where the prisoner is to serve the prisoner's prison term, as determined by the sentencing court * * *, and confinement in a juvenile facility.

{¶ 30} Although R.C. 2967.191(A) places on ODRC the responsibility of reducing an offender's prison term, R.C. 2929.19(B)(2)(g)(i) imposes on the sentencing court an obligation to calculate the amount of jail-time credit to which the offender is entitled. It instructs the court to:

> [d]etermine, notify the offender of, and include in the sentencing entry the total number of days, including the sentencing date but excluding conveyance time, that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced and by which the department of rehabilitation and correction must reduce the definite prison term imposed on the offender as the offender's stated prison term or, if the offense is an offense for which a non-life felony indefinite prison term is imposed under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code, the minimum and maximum prison terms imposed on the offender as part of that non-life felony indefinite prison term, under section 2967.191 of the Revised Code.

*Id.*

**{¶ 31}** Application of jail-time credit to an offender who is serving two or more prison sentences depends on whether the offender is serving the sentences concurrently or consecutively. *Fugate* at ¶ 9-11, citing Ohio Adm.Code 5120-2-04(F) and (G). In both scenarios, however, the objective remains "to comply with the requirements of equal protection by reducing the total time that offenders spend in prison after sentencing by an amount equal to the time that they were previously held." *Id.* at ¶ 11. To satisfy that objective, "[w]hen a defendant is sentenced to concurrent prison terms for multiple charges, jail-time credit pursuant to R.C. 2967.191 must be applied toward each concurrent prison term." *Id.* at the syllabus; *see also*, Ohio Adm.Code 5120-2-04(F). But on the other hand, when defendant is sentenced to consecutive prison terms for multiple charges, jail-time credit is "applied only once," to the aggregate prison term. *Id.* at ¶ 10; *see also*, Ohio Adm.Code 5120-2-04(G).

**{¶ 32}** Favours spent 1,124 days in custody following his arrest on the offenses underlying the 2019 case. Favours argues that the trial court was required to order his sentences in the 2018 and 2019 cases to run concurrently and that he was therefore entitled to have those 1,124 days applied to both sentences, pursuant to *Fugate*. He also argues that the trial court lacked a legal basis for reducing his jail-time credit by the number of days the court purportedly used to terminate the 2017 case. We address his second argument first.

### 1. The 2017 case

**{¶ 33}** In the 2017 case, the trial court initially sentenced Favours to two years of community control/basic supervision. "When an offender is sentenced to community control for one or more felony convictions, the offender must be notified at the time of sentencing of the specific prison term (or, under the present version of the statute, 'the range of prison terms') that could be imposed if the offender does not successfully complete the conditions of community control." *Jones*, 2022-Ohio-4485 at ¶ 12, citing R.C. 2929.19(B)(4). The trial court notified Favours at his original sentencing hearing in the 2017 case that, should he violate the terms of his community control or the law, and should the court choose to impose a prison term as a result of such a violation, the court would impose a 24-month prison term.

**{¶ 34}** When Favours subsequently pled guilty in the 2018 case, he stipulated to having violated the conditions of his community control sanctions in the 2017 case. After

finding Favours in violation of the conditions of his community control sanctions, the trial court resentenced Favours in the 2017 case. Rather than impose the reserved prison sentence, however, the trial court extended the term of Favours's community control by one year and imposed additional conditions and heightened supervision. It again informed Favours that if he failed to comply with the terms of his community control sanctions, it would impose a prison term of 24 months.

{¶ 35} The reserved 24-month sentence in the 2017 case was "a hypothetical or potential future sentence" that had "not yet been imposed." *Id.* at ¶ 12, citing *State v. Howard*, 162 Ohio St.3d 314, 2020-Ohio-3195, ¶ 25. "Although a court sentencing a defendant to community control must inform the defendant of the prison term the court could impose if the defendant violates community control, 'when one is sentenced to community control supervision, the defendant is sentenced to community control and not sentenced to the stated prison term.' " *State v. Thompson*, 10th Dist. No. 20AP-352, 2021-Ohio-4491, ¶ 25, quoting *State v. Solomon*, 11th Dist. No. 2017-P-0078, 2019-Ohio-1841 ¶ 39.

{¶ 36} While on community control in the 2017 and 2018 cases, Favours was arrested on December 23, 2019 on a new felony charge, which ultimately led to the 2019 indictment, and he has remained in custody ever since.

{¶ 37} "Generally, under Ohio law, '[d]ue process requires that before revoking community control, the trial court must (1) hold a hearing to determine if probable cause exists to believe the defendant has violated the terms of his [community control] and then (2) hold a hearing to determine if [community control] should be revoked.' " *State v. Thomas*, 10th Dist. No. 13AP-985, 2014-Ohio-2912, ¶ 10, quoting *State v. Kornegay*, 7th Dist. No. 12 MA 10, 2013-Ohio-658, ¶ 14. Whether to revoke community control rests within the trial court's sound discretion. *Id.*, citing *State v. Mason*, 10th Dist. No. 01AP-847, 2002-Ohio-2803, ¶ 27. If an offender violates the conditions of a community control sanction, the sentencing court may extend the term of the offender's community control, impose a more restrictive sanction, or revoke community control and impose a prison term. R.C. 2929.15(B)(1). "Following a community control violation, the trial court conducts a second sentencing hearing. At this second hearing, the court sentences the offender anew and must comply with the relevant sentencing statutes." *State v. Fraley*, 105 Ohio St.3d 13, 2004-Ohio-7110, ¶ 17.

{¶ 38} The trial court did not hold a community control revocation hearing in the 2017 case following Favours's 2019 arrest, it did not revoke Favours's community control, and it did not impose the reserved prison sentence on Favours. Although originally scheduled for a hearing on January 10, 2020, the revocation hearing was repeatedly continued.[2] The last scheduled date for a revocation hearing in the 2017 case was January 18, 2022. On December 31, 2021, however, the trial court issued its termination entry in the 2017 case, which noted the court's understanding that Favours had "accumulated jail time credit in the amount of the original sentence" and discharged Favours "from community control." (Dec. 31, 2021 Termination Entry, case No. 17CR-5934.) Neither the state nor Favours appealed that termination entry.

### 2. Jail-time credit purportedly applied to the 2017 case

{¶ 39} Although not directly before this court on appeal, the termination of the 2017 case nevertheless affects our analysis of his assignments of error regarding the 2018 and 2019 cases, which are before us. First, relying on *Fugate*, 2008-Ohio-856, Favours argues that the trial court erred by deducting from his jail-time credit in the 2018 and/or 2019 cases 730 days, as having been applied to the terminated 2017 case.

{¶ 40} Favours's reliance on *Fugate* is misplaced. Fugate was serving a term of community control when he was indicted on new felony charges, and the probation department filed a motion to revoke his community control. After a jury found Fugate guilty of charges in the new indictment, the trial court held a revocation hearing immediately before sentencing Fugate on the new charges, and Fugate admitted to violating the terms of his community control. The trial court revoked Fugate's community control and imposed a 12-month prison sentence for the violation of community control, to run concurrently with the sentences on his new convictions, which were also ordered to run concurrently. The trial court found that Fugate was entitled to 213 days of jail-time credit, which it applied only to the sentence for his community control violation. This court affirmed the trial court's judgment, rejecting Fugate's argument that he was entitled to 213 days of jail-time credit on all his sentences, but the Supreme Court of Ohio reversed. It

---

[2] During a May 3, 2021 bond hearing in the 2019 case, the prosecution offered, "we can go * * * forward on the revocation cases. * * * If [Favours] doesn't want to just be waiting [for] trial, we have things that we can sentence him on. He can be doing those sentences while he waits [for] trial" on the 2019 case. (May 3, 2021 Tr. at 7.) The court did not take that option. Instead, it maintained the holders on the 2017 and 2018 cases and refused to modify bond in the 2019 case. *Id.* at 17.

held, "When a defendant is sentenced to concurrent prison terms for multiple charges, jail-time credit pursuant to R.C. 2967.191 must be applied toward each concurrent prison term." *Id.* at the syllabus. Because the trial court had ordered the sentences on Fugate's community control violation and his sentences on the new convictions to all run concurrently, the Supreme Court determined that, to have any effect, the jail-time credit must be applied to all three sentences.

{¶ 41} This court has rejected the argument that *Fugate* prohibits a court from applying jail-time credit solely against a prison term imposed for a community control violation, without also applying the credit to sentences imposed for new offenses committed while the offender was on community control. For example, in *State v. Speakman*, 10th Dist. No. 08AP-456, 2009-Ohio-1184, we held that *Fugate* was inapplicable to a factual situation in which "the court sentenced appellant [for a community control violation] to an amount of time equal to the amount of jail time credit he had, which resulted in appellant having already served his sentence for the community control violation by the time of the sentencing hearing" on his new convictions. *Id.* at ¶ 13. We stated, "the trial court made it clear that the sentence imposed for appellant's community control violation was not a sentence ordered to be served concurrently with the 12-year sentence." *Id.*; *see also State v. Allen*, 10th Dist. No. 19AP-285, 2020-Ohio-5155. We have reached the same result even when the termination of community control, for time served, occurred prior to sentencing on new offenses. For example, in *Smith*, 2021-Ohio-4091, we stated:

> In this case the trial court did not impose a sentence for the community control violations in 15CR-3524 and 15CR-4921 to be served concurrently with the sentence for the conviction in 19CR-1778. Instead, it found Smith had served jail time equal to the time remaining on his original sentences in 15CR-3524 and 15CR-4921. Accordingly, the trial court applied 612 days of jail-time credit to those sentences and terminated 15CR-3524 and 15CR-4921 ***before*** the sentencing hearing in 19CR-1778. At the sentencing hearing, the trial court credited the remaining 32 days Smith had spent in jail awaiting sentencing to the sentence imposed in 19CR-1778. Under these circumstances *Fugate* did not apply, and the trial court did not plainly err by refusing to apply the 612 days of jail time that completed his sentences in 15CR-3524 and 15CR-4921 as jail-time credit in 19CR-1778.

(Emphasis added.) *Id.* at ¶ 19. Vis-à-vis *Fugate*, we agree with *Smith*.

{¶ 42} What is concerning here is that the trial court never imposed a prison sentence in the 2017 case.[3] The trial court did not hold a community control revocation hearing, did not revoke Favours's community control, did not sentence Favours anew on a violation, and did not impose a prison sentence in the 2017 case. Instead, the trial court summarily, and without a hearing, "discharged [Favours] from Community Control" and terminated the 2017 case. (Dec. 31, 2021 Termination Entry, case No. 17CR-5934.) The judgment entry states that Favours "has accumulated jail time credit in the amount of the original sentence," but the court had never imposed a prison sentence to which jail-time credit could apply. *Id.* Even if it could have done so without holding the hearing required by due process and Crim.R. 32.3, the trial court did not state in its termination entry in the 2017 case that it was revoking Favours's community control, sentencing Favours to a two-year prison term, and applying 730 days of jail-time credit to terminate the case for time served. Because the trial court never sentenced Favours to a prison term, there was no sentence against which it could apply jail-time credit. Accordingly, the trial court erred by determining after the fact that it had applied 730 days of Favours's jail-time credit to the

---

[3] In cases like *Speakman* and *Allen*, where sentencing on new offenses is conducted simultaneously with sentencing for a community control violation, it might be assumed that a court's termination of the community control case for a definite number of days of credit constitutes a conjunctive revocation of community control, imposition of a prison sentence for the violation of community control, and application of jail-time credit. The same assumption, however, cannot be made in cases like this (and *Smith*), in which the community control case is independently terminated prior to sentencing hearing on the new offenses without a hearing and in which the termination entry contains neither the imposition of a definite prison term nor a definite number of jail-time credit days to be applied.

A recent decision from the Third District Court of Appeals demonstrates best practice. There, the trial court explained to the defendant:

> "What I'm going to do is this: In the 2017 case, which is the — the community control violation, I agree that for purposes of that case, I'm going to find that you are no longer amenable to community control. That case needs to be closed. Ultimately, I have reserved 17 months on that. You have — between all of these cases, you have — you have done over 460 days, 462 days. So what I'm going to do on that case is I'm going to order that you serve 15 months in an institution under the control of the Department. I'm going to — which is, in the way the Department calculates, that's 15 months of 30 days, which means 450 days. So I'm going to order that you serve 15 months. I'm going to credit 450 days. * * * Which essentially, although it's going to say a prison sentence, the credit wipes that out."

*State v. Ochoa*, 3d Dist. No. 5-22-19, 2023-Ohio-978, ¶ 8.

2017 case and by subtracting those days from the jail-time credit available to apply to the 2018 and/or 2019 cases.

{¶ 43} Favours also challenges as error the trial court's order that the sentences in the 2018 and 2019 cases run consecutively to the sentence in the already terminated 2017 case. We agree. First, a prison sentence cannot be ordered to be served consecutively to a sentence of community control unless expressly authorized by statute. *See State v. Hitchcock*, 157 Ohio St.3d 215, 2019-Ohio-3246, ¶ 24 ("Because no provision of the Revised Code authorizes trial courts to impose community-control sanctions on one felony count to be served consecutively to a prison term on another felony count, we must conclude that trial courts may not do so."). Second, a reserved but unimposed prison term "is not available as a sentence for the purposes of consecutive sentencing." *Jones*, 2022-Ohio-4485 at ¶ 13, citing *State v. White*, 18 Ohio St.3d 340 (1985), and *Howard*, 2020-Ohio-3195 at ¶ 25. Finally, the sentence in the 2017 case (the community control sanction) terminated prior to sentencing in the 2018 and 2019 case. *See State v. Beaver*, 8th Dist. No. 106170, 2018-Ohio-2840, ¶ 7 (vacating portion of entry ordering nine-year sentence to run consecutive to an already served sentence).

### 3. Application of jail-time credit only to 2019 case

{¶ 44} Favours's final argument under his second assignment of error challenges the trial court's application of jail-time credit only to the sentence in the 2019 case, and not to the sentence in the 2018 case. The trial court determined that Favours was entitled to credit against only the sentence in the 2019 case because it was ordering Favours to serve the sentences in the 2018 and 2019 cases consecutively. Because as addressed in relation to Favours's first assignment of error we disagree with his argument that the trial court lacked authority to impose those sentences consecutively, we reject Favours's argument that he was entitled to credit against both the 2018 and 2019 sentences.

{¶ 45} For these reasons, we sustain in part and overrule in part Favours's second assignment of error. Favours is entitled to have the full 1,177 days of jail-time credit applied to either his 2018 or 2019 case.

### C. Assignment of error No. 3: firearm specification

{¶ 46} In his third assignment of error, Favours argues that the trial court erred by imposing a three-year consecutive prison sentence on the firearm specification to the

offense of involuntary manslaughter. He maintains that the three-year sentence is contrary to law.

{¶ 47} In the 2019 case, Favours entered a no contest plea to Count 1 of the indictment, which charged him with involuntary manslaughter under R.C. 2903.04, and to the attached three-year firearm specification pursuant to R.C. 2941.145(A). Count 1 alleged that Favours caused the death of Kahlil J. Swayne as a proximate result of Favours committing or attempting to commit the offense of having weapons while under disability. Before accepting Favours's plea, the trial court informed Favours of the maximum penalties he faced—an indeterminate prison sentence with a minimum term of 11 years and a maximum term of 16 1/2 years for involuntary manslaughter, plus a 3-year mandatory, consecutive term of imprisonment on the firearm specification.

{¶ 48} At the sentencing hearing, the trial court imposed an indefinite prison sentence of 9 to 13 1/2 years for involuntary manslaughter and a consecutive 3-year sentence on the firearm specification. Favours did not object to the imposition of the three-year sentence on the firearm specification, but a sentence that is contrary to law constitutes plain error. *See State v. Ayers*, 10th Dist. No. 13AP-371, 2014-Ohio-276, ¶ 15 (consecutive sentences imposed without the trial court making the requisite findings were "contrary to law and constitutes plain error"). Nevertheless, we find no error, plain or otherwise, in the trial court's imposition of a three-year prison sentence on the firearm specification.

{¶ 49} Favours first argues that the sentence on the firearm specification is contrary to law because R.C. 2929.14(B)(1)(e) prohibits a sentence for a firearm specification when the underlying offense is having weapons while under disability. Except as provided in R.C. 2929.14(B)(1)(e), "if an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in [R.C. 2941.145(A)]," the trial court must impose on the offender "[a] prison term of three years." R.C. 2929.14(B)(1)(a)(ii). R.C. 2929.14(B)(1)(e) " 'expressly exclude[s] certain firearm offenses from enhancement via specification' " and provides that the offense of having weapons while under disability may not be enhanced by specification unless certain criteria are met. *State v. Gray*, 4th Dist. No. 21CA6, 2022-Ohio-2940, ¶ 22-23, quoting *State v. Santos*, 2d Dist. No. 28445, 2020-Ohio-1043, ¶ 41. As relevant here, it states, a "court shall not impose any of the prison terms described in [R.C. 2929.14(B)(1)(a)] upon an offender for a violation of [R.C. 2923.13 (having weapons while under disability)] unless * * * [t]he offender

previously has been convicted of aggravated murder, murder, or any felony of the first or second degree" and "[l]ess than five years have passed since the offender was released from prison or post-release control, whichever is later, for the prior offense." R.C. 2929.14(B)(1)(e)(i) and (ii). The state does not argue that Favours had a prior conviction that would satisfy R.C. 2929.14(B)(1)(e)(1).

{¶ 50} The firearm specification on which the trial court sentenced Favours was attached to the offense of involuntary manslaughter, an offense not listed in R.C. 2929.14(B)(1)(e). Courts, including this court, have held that the prohibition on sentence enhancements by specification is limited only to those firearm offenses expressly set out in R.C. 2929.14(B)(1)(e). *See Gray* at ¶ 24; *Santos* at ¶ 42 ("in accordance with the maxim *expressio unius est exclusio alterius*, one must presume that the legislature did not intend to foreclose enhancement of a tampering with evidence charge"); *State v. Jeter*, 7th Dist. No. 19 JE 0016, 2021-Ohio-2351, ¶ 27 (the exceptions created in R.C. 2929.14(B)(1)(e) indicate the General Assembly "knew how to add provisions limiting firearms specification sentences and it could have made amendments to prohibit a firearm specification in this instance, but it did not do so"); *State v. Wright*, 10th Dist. No. 09AP-207, 2009-Ohio-6773, ¶ 32 (holding that former R.C. 2929.14(D)(1)(e), now R.C. 2929.14(B)(1)(e), did not prohibit sentencing on a firearm specification when the underlying felony is tampering with evidence).

{¶ 51} We agree with those courts that have held that the prohibition on sentence enhancements by specification is limited only to those firearm offenses expressly set out in R.C. 2929.14(B)(1)(e). Had the General Assembly intended to preclude sentencing on firearm specifications attached to other offenses, it knew how to do so. But Favours argues that, because the predicate offense for the involuntary manslaughter charge was having weapons while under disability, R.C. 2929.14(B)(1)(e) precludes the sentence on the specification. Favours's argument that his conviction for involuntary manslaughter required a violation of R.C. 2923.13 and that he therefore could not be subject to a firearm specification absent the findings required under R.C. 2929.14(B)(1)(e) is unpersuasive. Favours was separately charged in the 2019 case with having weapons while under disability. That charge did not include a firearm specification, presumably because of the prohibition stated in R.C. 2929.14(B)(1)(e), but nothing in that statute precluded the trial

court from sentencing Favours on a firearm specification attached to his conviction for involuntary manslaughter.

{¶ 52} Favours next alternatively argues that, even if the trial court was not precluded from imposing a sentence on the firearm specification, it erred by imposing the three-year firearm specification under R.C. 2929.14(B)(1)(a)(ii). Specifically, Favours contends that the trial prosecutor's factual recitation during the December 6, 2022 plea hearing implicates only the one-year firearm specification under R.C. 2929.14(B)(1)(a)(iii), because the described factual scenario "does not implicate the gravity of conduct embraced by a three-year firearm specification" under R.C. 2929.14(B)(1)(a)(ii). (Appellant's Brief at 24.) At the plea hearing, the trial prosecutor described the conduct underlying the involuntary manslaughter offense as follows: "[H]e was fiddling around with that firearm. It accidentally went off, a bullet was fired, which hits the victim * * * in the back. That did rupture [the victim's] aorta causing him to bleed out and pass that day." (Dec. 6, 2022 Tr. at 19.)

{¶ 53} R.C. 2929.14(B)(1)(a) provides, in relevant part, as follows:

> Except as provided in division (B)(1)(e) of this section, if an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in section 2941.141, 2941.144, or 2941.145 of the Revised Code, the court shall impose on the offender one of the following prison terms:
>
> * * *
>
> (ii) A prison term of three years if the specification is of the type described in division (A) of section 2941.145 of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while committing the offense and displaying the firearm, brandishing the firearm, indicating that the offender possessed the firearm, or using it to facilitate the offense;
>
> (iii) A prison term of one year if the specification is of the type described in division (A) of section 2941.141 of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while committing the offense.

(Emphasis added.)

**{¶ 54}** Here, Favours pled guilty to involuntary manslaughter in violation of R.C. 2903.04 and to its accompanying three-year firearm specification, as charged under R.C. 2941.145(A) in the indictment. By pleading guilty to the firearm specification, Favours admitted that he displayed, brandished, indicated that he possessed, or used the firearm on or about his person while committing the involuntary manslaughter offense.

**{¶ 55}** Favours cites various cannons of statutory construction to argue the trial prosecutor's factual recitation during the plea hearing does not track with the language of the three-year firearm specification statute to which he pled guilty. But, Favours has not moved to vacate his guilty plea on that basis (or any other). Because Favours pled guilty to Count 1 and its accompanying three-year firearm specification as charged in the indictment under R.C. 2929.145(A), the three-year firearm specification term mandated by R.C. 2929.14(A)(1)(a)(ii) clearly applied. To be sure, the one-year firearm specification provided by R.C. 2929.14(A)(1)(a)(iii) only applies to specifications that are "the type described" in R.C. 2929.141(A).

**{¶ 56}** For these reasons, we overrule Favours's third assignment of error.

### D. Assignment of error No. 4: effect of sentence for firearm specification on indeterminate sentence for underlying offense

**{¶ 57}** In his fourth assignment of error, Favours argues that his sentence is contrary to law because the trial court erred by adding his three-year sentence on the firearm specification to both the minimum and maximum terms of his indefinite sentence for involuntary manslaughter when it stated Favours's aggregate sentence.

**{¶ 58}** The trial court announced that it was imposing for the offense of involuntary manslaughter "an indefinite prison sentence with a minimum term of nine years [and] a maximum indefinite term of 13 and a half years." (Jan. 18, 2023 Tr. at 45-46.) It then stated that the three-year sentence on "the firearm specification must run consecutive to that particular sentence." *Id.* at 46. The trial court then stated that Favours would serve an aggregate minimum sentence of 12 years and an aggregate maximum sentence of 16 1/2 years in the 2019 case, consecutive to his two-year sentence for the community control violation in the 2018 case. Favours contends that the definite prison term for a firearm specification cannot impact the maximum term of his indefinite prison sentence for the underlying offense of involuntary manslaughter. While we agree that the sentence on the firearm cannot increase the maximum term of Favours's sentence for involuntary

manslaughter, that does not mean that the specification sentence cannot impact the total length of his aggregate sentences.

{¶ 59} R.C. 2929.144 explains the calculation of maximum terms when, as here, a trial court is required to impose an indefinite sentence. Under R.C. 2929.144(B)(1), an offender's maximum prison term for an offense is calculated by adding to the offender's minimum prison term 50 percent of that term; the maximum term is one and a half times the minimum term. Thus, if the offender's minimum prison term is three years, his maximum prison term under the statue is 4 1/2 years.

{¶ 60} R.C. 2929.144(B)(4) provides that when a mandatory prison term is imposed with respect to a conviction of or plea of guilty to a specification, the specification sentence "is separate from the sentence being imposed for the [underlying] felony" and "shall not be considered or included *in determining a maximum prison term*" for the underlying felony under R.C. 2929.114(B)(1) through (3). (Emphasis added.) Thus, R.C. 2929.144(B)(4) makes it improper for the court to combine Favours's firearm specification sentence (3 years) with his minimum sentence for involuntary manslaughter (9 years) and to use the resulting total of 12 years to calculate a maximum sentence of 18 years [12+(3 + 9 = 12 / 2)] for the involuntary manslaughter count. R.C. 2929.144(B)(4) is consistent with the well-settled rule in Ohio that a trial court must consider each count individually and impose a separate sentence for each count. *See, e.g.*, *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 9. The trial court correctly separated Favours's specification sentence and did not consider or include it when calculating the maximum sentence of 13 1/2 years for involuntary manslaughter. R.C. 2929.144 only addresses the calculation of sentences on individual counts; it does not address how an indefinite sentence impacts an offender's aggregate sentence when there are multiple counts being sentenced.

{¶ 61} The trial court correctly imposed an indefinite sentence for the offense of involuntary manslaughter, and it correctly calculated Favours's maximum sentence as one and a half times his minimum sentence on that offense. Appellant acknowledges that he must serve his three-year sentence on the firearm specification prior to, and consecutive to, his indefinite sentence for involuntary manslaughter. *See State v. Moore*, 154 Ohio St.3d 94, 2018-Ohio-3237, ¶ 8, citing R.C. 2929.14(C)(1)(a). Thus, appellant will serve three years on the firearm specification before the start of his indefinite sentence for involuntary manslaughter. If he serves only his minimum term, he will have served an aggregate term

of 12 years in the 2019 case, but if he is required to serve the maximum term of his indefinite sentence, he will have served 16 1/2 years in that case. Finding no error in Favours's sentence in the 2019 case, we overrule his fourth assignment of error.

### E. Assignment of error No. 5: discrepancy between oral sentence and judgment entry

{¶ 62} In his fifth assignment of error, Favours argues that the trial court's judgment entry in the 2019 case purports to impose a sentence that is different and longer on the offense of involuntary manslaughter than what the trial court announced at the sentencing hearing.

{¶ 63} "Pursuant to Crim.R. 43(A), a defendant must be present at 'the imposition of sentence[.]' Thus, * * * a trial court errs when it issues a judgment entry that imposes a sentence that differs from the sentence the trial court announced at a sentencing hearing in the defendant's presence." *State v. Jordan*, 10th Dist. No. 05AP-1330, 2006-Ohio-5208, ¶ 48, citing *State v. Aliane*, 10th Dist. No. 03AP-840, 2004-Ohio-3730, ¶ 8, and *State v. Jones*, 10th Dist. No. 98AP-639, 1999 Ohio App. LEXIS 1248 (Mar. 18, 1999).

{¶ 64} The state concedes that the trial court's judgment entry in the 2019 case imposes a different indefinite sentence for the offense of involuntary manslaughter than that announced at the sentencing hearing. At the sentencing hearing, the trial court imposed an indefinite sentence with a minimum prison term of 9 years and a maximum prison term of 13 1/2 years, but the judgment entry imposes an indefinite sentence with a minimum term of 11 years and a maximum term of 16 1/2 years.

{¶ 65} Because the trial court erred in setting out in its judgment entry a sentence different from that announced during the sentencing hearing, we sustain Favours's fifth assignment of error. We agree with the state, however, that the discrepancy between the announced sentence and the sentence incorporated into the judgment entry is a clerical error that the court may correct on remand with a nunc pro tunc entry.

### F. Assignment of error No. 6: constitutional challenges to indefinite sentences

{¶ 66} In his sixth assignment of error, Favours argues that the trial court's imposition of an indefinite sentence for the offense of involuntary manslaughter violated the separation of powers doctrine and his rights to due process and a jury trial under the United States and Ohio Constitutions. This assignment of error challenges the

constitutionality of the Reagan Tokes Law, enacted through 2018 Am.Sub.S.B. 201. During the pendency of this appeal, however, the Supreme Court of Ohio upheld the constitutionality of the Reagan Tokes Law in *State v. Hacker*, 173 Ohio St.3d 219, 2023-Ohio-2535, rejecting challenges based on the right to a jury trial, procedural due process, and the separation of powers doctrine. In light of *Hacker*, we overrule Favours's sixth assignment of error.

### G. Seventh assignment of error: ineffective assistance of counsel

{¶ 67} In his final assignment of error, Favours argues that he was denied his constitutional right to the effective assistance of counsel by his trial counsel's failure to object to the errors he has raised in his third and fourth assignments of error here.

{¶ 68} To prevail on a claim of ineffective assistance of counsel, Favours must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient by showing that his counsel committed errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If he makes that showing, Favours must then establish that he was prejudiced by counsel's deficient performance. *Id.* To demonstrate prejudice, Favours must establish there is a reasonable probability that, but for his counsel's errors, the results of the trial would have been different. *Id.* at 694. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id.*

{¶ 69} Favours argues that his trial counsel performed deficiently by failing to object to the trial court's imposition of a three-year sentence on the firearm specification attached to the offense of involuntary manslaughter and to the trial court's calculation of his aggregate maximum term of imprisonment. These alleged errors are the subject of Favours's third and fourth assignments of error, both of which this court has overruled.

{¶ 70} Favours argues that he may establish ineffective assistance of counsel based on the errors alleged in his third and fourth assignments of error even if this court overrules those assignments of error upon the conclusion that Favours has not satisfied the requirements for plain error with respect to the alleged errors. Favours cites *People v. Randolph*, 502 Mich. 1, 5 (2018), in support of his argument. In *Randolph*, the Michigan Supreme Court held that, because of the different standards of review under the plain error test and the test for ineffective assistance of counsel, "a failure to satisfy the plain error test will not, without more, foreclose a defendant's claim of ineffective assistance of trial

counsel." *Id.* at 1, 5. But as discussed above, this court has gone beyond simply holding that, under his third and fourth assignments of error, Favours has failed to establish plain error; we have rejected Favours's assertions of error, plain or otherwise, concluding that the trial court acted in conformity with the law in all respects in sentencing Favours on the firearm specification and in stating the aggregate length of Favours's sentence. We likewise conclude that Favours's counsel was not ineffective for failing to object to the trial court's appropriate actions. Accordingly, we overrule Favours's seventh assignment of error.

## III. CONCLUSION

{¶ 71} For these reasons, we sustain Favours's fifth assignment of error, sustain in part and overrule in part Favours's second assignment of error, and overrule Favours's remaining assignments of error. We therefore affirm in part and reverse in part the trial court's judgments, and we remand this matter to the trial court with instructions to correct the clerical error regarding the indefinite sentence imposed on Favours for the offense of involuntary manslaughter in the 2019 case and to recalculate and reallocate the days of jail-time credit to which Favours is entitled in the 2018 and 2019 cases.

*Judgments affirmed in part and reversed in part*;
*cause remanded with instructions.*

DORRIAN and EDELSTEIN, JJ., concur.

————————